MARY M. KELLER, Plaintiff and Appellant, *v.* GEORGE
EDWIN MARTIN, JR., Guardian of George Edwin Martin
and Mary Ellen Martin, Defendants and Respondents.

No. 11512.
Submitted March 12, 1969.
Decided April 3, 1969.
452 P.2d 422.

Landoe & Gary, Joseph P. Gary (argued), Bozeman, Arnold Huppert, Jr., Livingston, for appellant.

Byron L. Robb, (argued), Livingston, for respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

Suit by plaintiff for specific performance of a lease and option to purchase ranch lands. Defendants counterclaimed

for (1) an accounting of proceeds of sales of livestock, hay and pasturage, (2) possession of the ranch lands, and (3) damages for unlawful detainer. From a judgment denying specific performance and granting defendants' counterclaims, plaintiff appeals.

Plaintiff is Mary M. Keller, a widow with two teen-age children, who went into possession of the ranch as a tenant at will and seeks specific performance of an alleged subsequent oral lease and option to purchase. Defendants are George Edwin Martin, Jr., the guardian of his father George Erward Martin, and Mary Ellen Martin, the wife of George Martin.

In May, 1964, plaintiff was renting a small house near Livingston where she lived with her son Jess, age 18, and her daughter Cheeta, age 16. George Martin, in his 80's and retired, owned an 840 acre ranch south of Livingston which he had operated for many years by using tenants. He contacted plaintiff to secure her as a tenant and in May or June, 1964, plaintiff and her children moved to the ranch without any written tenancy agreement. According to plaintiff, she was to take care of Martin's cattle, irrigate, put up hay, and generally take care of the place in return for use of the house, orchard, garden rent-free together with half the calf crop and half the hay in 1965.

Plaintiff claims she performed these duties in 1964 and commencing in 1965 she improved the irrigation ditches, took care of the cattle, irrigated, put up the hay, and branded the calves. During the summer and fall of 1965 and according to plaintiff even earlier, various conversations and negotiations were carried on between plaintiff and George Martin relating to her leasing the ranch with an option to purchase and the purchase of Martin's cattle. Several contracts were drawn up by themselves but no agreement was reached on any of them. Eventually plaintiff went to a Bozeman attorney who drafted a lease and option to purchase which plaintiff discussed with George Martin who indicated certain changes he wanted made. Plain-

tiff returned to the attorney, the changes were made, and the modified lease and option to purchase was presented to George Martin. According to plaintiff, George Martin then agreed to it and said he would sign it. Neither George Martin, his wife, or plaintiff ever signed it.

The unsigned lease and option provided for the sale of all cattle and hay on the ranch to plaintiff for $18,000 on or before November 15, 1965, and in consideration of such payment to lease the ranch to plaintiff for one year. Thereafter the lease was subject to renewal for four years at an annual rental of $10,000 per year payable annually in advance commencing November 15, 1966. Plaintiff was given an option to purchase the ranch lands for $86,000 with the annual lease rentals applied to the purchase and the balance of $46,000 payable on or before November 15, 1970. Plaintiff was required to provide fire insurance on the ranch buildings and to pay the taxes during the lease period.

According to plaintiff after George Martin assured her he would sign the lease and option to purchase and in reliance thereon, plaintiff, George Martin, and Edward Ferguson, a cattle buyer for Sidney Sales Company, went to a Bozeman attorney on November 13, 1965, who drew up a bill of sale for "191 or more mixed cattle" branded with George Martin's brand to the Sidney Sales Company for $18,000 which George Martin signed. Plaintiff claims that the lease and option on the ranch was not signed at that time because they didn't have it with them and the Bozeman attorney advised them they could sign it when they got back home.

Thereafter plaintiff rounded up some 191 head of cattle on the ranch which were taken to a railroad siding near Livingston for shipment to Sidney. Plaintiff testified that part of these cattle were hers, stating that 27 were her half share of the 1965 cattle crop and 42 head had been given her by her brother, thus leaving approximately 131 head belonging to George Martin.

A day or two after the roundup plaintiff, George Martin, and Ferguson, the cattle buyer, went to Bozeman where the $18,000 sale price of the cattle was turned over to George Martin in the form of United States bonds and time savings certificates, some of which were in George Martin's name and some of which were in his wife's name.

Plaintiff claims that she sold the cattle and remitted the entire proceeds to George Martin in payment for Martin's cattle, the hay, and the lease for one year. She claims the bill of sale ran from George Martin to Sidney Sales Company to save drawing up two bills of sale. She claims that on their return to Livingston George Martin was ill and as a consequence the lease and option agreement was not signed.

After November 15, 1965 plaintiff remained on the ranch and although she attempted to get the lease and option signed by the Martins, they kept putting her off and never signed it. According to plaintiff on November 15, 1966, when the renewal of the lease was due, she went to the Martin residence with a check for the $10,000 which she tendered to the Martin's daughter-in-law who wouldn't accept it.

On December 12, 1966, George Martin was declared incompetent and his son Ed Martin was appointed his guardian by the district court. Subsequently the guardian served an eviction notice on plaintiff but she remained in possession of the land.

Thereafter plaintiff filed suit for specific performance of the unsigned lease and option to purchase against Ed Martin as guardian of his father George Martin, and against George Martin's wife.

The defendants' answer was essentially a general denial together with three counterclaims: (1) for an accounting of the proceeds of sale of the cattle, hay and pasturage, (2) for immediate possession of the ranch, and (3) for treble damages for unlawful detainer.

Plaintiff's reply denied the essentials of the counterclaims.

Trial was held on February 21, 1968 in the district court of

14

Park County before the Honorable Jack D. Shanstrom, district judge, sitting without a jury. Subsequently finding of fact and conclusions of law were entered favorable to defendants. Judgment was entered denying specific performance, granting defendants immediate possession of the ranch, and awarding defendants $10,511.91 for proceeds of pasture, sale of hay, treble damages for unlawful detainer, interest and costs. Plaintiff appeals from this judgment.

Two issues are presented for review upon this appeal: (1) Did the district court err in refusing to grant plaintiff specific performance of the unsigned lease and option to purchase? (2) Did the district court err in granting judgment to defendants on their counterclaims?

At the outset, we observe that the function of this Court upon appeal in an equity case is to "review all questions of fact arising upon the evidence presented in the record" and determine the same "as well as questions of law". Section 93-216, R.C.M.1947. Although the Supreme Court is bound to review the evidence as well as the law, the review is limited to determining whether there is substantial evidence to support the trial court's finding of fact and whether such findings are sufficient to support the conclusions of law based thereon. Bender v. Bender, 144 Mont. 470, 397 P.2d 957.

In our view this case essentially turns on the facts rather than the law. Once the facts herein are established, no substantial legal questions remain to be resolved in determining the appeal. The basis of the district court's decision is failure of proof on the part of the plaintiff. Its finding of fact No. 16 recites: "That the evidence herein preponderates in favor of defendants and against the plaintiff." Conclusion of law No. 3 provides: "That plaintiff has not sustained or met the required burden of proof for the relief asked for in her complaint herein, and is not entitled to specific performance of said unsigned lease-option agreement, nor of any other agreement, verbal or

written, with the defendants, said George Edwin Martin, or any of them."

Initially we observe that plaintiff did not submit any proposed findings of fact or conclusions of law to the district court. Neither did plaintiff file any exceptions to the findings made by the court nor move for amended, additional, or different findings. Failure to except to the findings of the trial court makes them final and the judgment will not be reversed. Section 93-5305, R.C.M. 1947, Rozan v. Rozen, 150 Mont. 121, 431 P.2d 870; Olsen v. United Benefit Life Ins. Co., 150 Mont. 147, 432 P.2d 381; Stapp v. Nickels, 150 Mont. 220, 434 P.2d 141. However, even though the failure to except to the trial court's findings makes them final, nontheles we shall discuss the merits of plaintiff's evidence and proof.

Directing our attention to the first issue for review upon this appeal as set forth above, we find it somewhat difficult to discuss the evidence because it involves as much what plaintiff did not prove as what the defendants did prove. In order not to unduly lengthen this opinion by reviewing each piece of evidence supporting each findings by the trial court, we will confine ourselves to a few examples.

The unsigned lease-option agreement of which plaintiff seeks specific performance provides for purchase of the Martins' cattle by plaintiff on or before November 15, 1965 by payment from plaintiff to the Martins of $18,000 whereupon the Martins would execute a bill of sale to plaintiff. Everything else in the lease-option agreement is contingent upon this being done, and if it is not done none of the other rights of the plaintiff accrue under the terms of the unsigned lease-option agreement.

Plaintiff's proof consists of her own testimony that part of the cattle sold were hers, that she sold the entire lot belonging partly to her and partly to Martin to the cattle buyer Ferguson for $18,000, and remitted the entire proceeds to George Martin and his wife in payment for his cattle, the hay, and the lease money for the year ending November 15, 1966. The

fact that claimant was a welfare recipient at that time and had been since she originally moved on the ranch hardly lends credence to her version of the cattle sale. The cattle buyer Ferguson, with whom plaintiff was acquainted and whom she procured, testified at times in substance that she sold the cattle to him and at other times that George Martin offered and sold the animals to him.

Standing against this testimonial evidence is the bill of sale on the cattle admitted in evidence. This shows a sale of the cattle from George Martin to Sidney Sales Company. It shows all the cattle branded with George Martin's brand. It contains a written declaration by Martin that "these cattle and brands are free from all incumbrances" and that said brand is registered in his name in the State of Montana. The evidence is unclear concerning whether the $18,000 was paid to plaintiff and by her turned over to George Martin or whether payment was made directly from Ferguson, the cattle buyer, to Martin and his wife.

The absence of additional evidence on plaintiff's part is equally illuminating. She did not produce her brother to testify that he had given her 42 head of cattle as she claimed, nor did she produce any bill of sale or other evidence of such ownership. Neither did she produce any tax assessment lists covering these cattle, her income tax returns showing such sale, or offer any explanation for her failure to do so. If weaker and less satisfactory evidence is offered when stronger and more satisfactory evidence is available, the evidence offered should be viewed with distrust. Section 93-2001-1, R.C.M.1947.

The unsigned lease-option agreement also required plaintiff to pay $10,000 to the Martins on or before November 15, 1966 in order to renew the lease. Plaintiff testified that she went to the Martin residence at that time, was informed by the Martins' daugher-in-law that George Martin was ill and could not see her, tendered payment to the daughter-in-law of a $10,000 check she had in her pocketbook, but the daughter-in-law would

not accept it, telling her that her husband would be over to see her on his return which he did not do. Plaintiff's testimony is entirely uncorroborated. She offered no check in evidence that she claims to have tendered, no proof that she had $10,000 at that time, nor did she deposit the money in a bank or in court and notify the Martins.

Aside from the distrust of her testimony commanded by statute (section 93-2001-1, R.C.M. 1947), her own proof fails to establish a lawful tender because (1) it was not tendered to the Martins to whom tender was required, and (2) there was no written offer of payment or deposit of funds with a bank or the court. See sections 58-423, 93-2201-1, and 93-4501, R.C.M.1947.

Another example concerns the payment of taxes on the ranch. The unsigned lease-option agreement required plaintiff to pay the taxes. The trial court found that she didn't pay the taxes, offer the Martins reimbursement for their payment of the taxes, or render payment of the taxes. It is undisputed that the Martins paid those taxes. Plaintiff claims she tried to pay the taxes due by November 30, 1966 but that the county officials would not accept her payment because they had already been paid, and that she needed the signed lease-option agreement before they would accept payment of taxes from her. There was no offer of reimbursement or tender of payment to the Martins prior to trial. There is simply nothing here to dispute the finding of fact made by the trial court.

A final example of failure of plaintiff's proof concerns the requirement contained in the unsigned lease-option agreement that plaintiff furnish fire insurance on the buildings during the lease period. The evidence clearly shows that she didn't procure any fire insurance whatever until about September 19, 1966 which was some ten months after plaintiff claims that the lease went into effect. At that time plaintiff only paid $20 on the insurance and it was cancelled about May 20, 1967 for failure to pay the balance of the premium. She later attempted to

18

reinstate the insurance but her check would not clear the bank and no coverage was issued.

For the foregoing reasons we hold that there is substantial evidence supporting the trial court's finding of fact, that the findings of fact support the conclusions of law of the trial court, that the lease-option agreement was never executed by signature or performance, that no tender of payments under such agreement was ever made, and that plaintiff did not sustain the burden of proof to entitle her to specific performance.

We now direct our attention to the second issue for review, viz. did the district court err in granting judgment to defendants on their counterclaims? There is no issue raised as to the amounts awarded under the first counterclaim for hay and pasturage. The only claim that is made is that plaintiff is not liable to the defendants for these items because she is entitled to specific performance of the lease-option agreement and therefore entitled to the hay and pasturage. We have heretofore determined to the contrary, so plaintiff is clearly liable for the amounts awarded under defendants' first counterclaim.

The judgment on the second counterclaim grants immediate possession of the ranch to plaintiff. This is clearly correct and requires no extended discussion. As we have heretofore held that plaintiff is not entitled to specific performance of the lease-option agreement, her occupancy of the ranch is as a tenant at will. This tenancy was terminated 31 days after service of the eviction notice dated January 18, 1967.

The judgment on the third counterclaim is for treble damages for unlawful detainer. It is in the amount of $5,611.33 representing treble damages for rental value of the ranch from February 19, 1967, less the award for pasture and hay in 1967 contained in the first counterclaim. This award is based on a reasonable annual rental for the use and possession of the ranch of $2,000.

This award must be vacated and set aside. There is a total absence of evidence concerning the reasonable rental value

of the premises. Section 93-9715, R.C.M.1947, requires the court if the proceeding be tried without a jury to "assess the damages occasioned * * * by * * * unlawful detainer, alleged in the complaint and *proved on the trial.*" (Emphasis added.) As no damages were proved on the trial, defendants are not entitled to any award on their third counterclaim.

The award of $5,611.33 on the defendants' third counterclaim is reversed and ordered stricken from the judgment. As so modified, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES and JOHN CONWAY HARRISON concur.