BAKER NATIONAL BANK, A CORPORATION, PLAINTIFF AND APPELLANT, *v.* AVON LESTAR, VIRGIL MIKE LESTAR, MARY ETTA LESTAR, AS GUARDIAN OF THE PERSON AND ESTATE OF EUGENE LESTAR AND ROBIN LESTAR, AND MARY ETTA LESTAR AS ADMINISTRATRIX OF THE ESTATE OF JEWELL LESTAR PLUMMER, DEFENDANTS AND RESPONDENTS.

No. 11372.
Submitted Feb. 13, 1969.
Decided April 21, 1969.
Rehearing Denied May 20, 1969.
453 P.2d 774.

Gene Huntley, Russell L. Culver, Baker, Hughes & Bennett, Helena, George T. Bennett argued, Helena, for appellant.

Sandall, Moses & Cavan, John Cavan, appeared, Billings, Jerome J. Cate argued, Billings, for respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

Action by Bank to collect the balance due on a promissory note and to set aside an alleged fraudulent conveyance of land. From a judgment in favor of the Bank for $15,210.34

on the promissory note and refusing to set aside the alleged fraudulent conveyence, the Bank appeals.

Plaintiff-appellant is Baker National Bank, a corporation, referred to herein as the Bank. Defendants-respondents are Avon Lestar and his children.

Defendant Avon Lestar, a rancher and livestock dealer, had resided on his ranch property in Fallon county for many years and had maintained an account with the Bank. On May 19, 1961 he executed and delivered his promissory note in the amount of $25,500 payable to the Bank and due on November 15, 1961. This note was secured by a chattel mortgage on cattle, machinery and equipment.

In the late summer or early fall of 1961, defendant Avon Lestar and Eph Keirle, the president of the Bank, entered into an agreement the specific terms of which are in dispute. However, in general terms the agreement provided that Eph Keirle would furnish funds to defendant Avon Lestar for short term purchases of cattle and that upon resale of the cattle so purchased, Avon Lestar would repay the funds advanced together with the sum of $1.00 per head on all cattle so sold.

As a result of this agreement the sum of $32,000 was advanced to defendant Avon Lestar from an account maintained in the Bank by certain members of the Keirle family—Eph Keirle (the president of the Bank), Inga Keirle (presumably his wife), and Pearl Heller (his daughter and bank cashier).

This account, referred to as the KHK account, was a separate fund apart from regular Bank funds and was utilized to loan money to persons to whom the Bank could not otherwise make loans because of limitations on the Bank's lending capacity. At about the time the money was advanced to defendant Avon Lestar from this account, he gave Pearl Heller a handwritten note which stated ''I hereby give Pearl M. Heller authority to debit my account up to the amt. of $32,000 —that I owe the K.H.K. acct.''

Defendant Avon Lestar subsequently purchased a large number of cattle, resold them, and paid the sum of $20,000 to the KHK account during the month of October, 1961. He disclaims owning any further money to this account, contending that the agreement with Eph Keirle was a personal business venture between them resulting in a non-repayable business loss rather than a personal loan.

Thereafter on November 14, 1961, the day before the balance owing on the $25,500 promissory note to the Bank became due, defendant Avon Lestar executed deed conveying his ranch property to his children for a stated consideration of one dollar. This deed recited that ''Said Deed is made subject to a 10 year lease in favor of Virgil Mike Lestar (one of his children), dated Nov. 13, 1961.'' (Paraenthetical identification supplied). This deed further provided that ''Said conveyance is also made subject to a Mortgage to the Federal Land Bank of Spokane, a Corp. of Spokane, Washington, which Mortgage is to be paid off by Virgil Mike Lestar, in accordance with the terms of said 10 year lease mentioned above.'' Although the acknowledgment by the notary on the deed was dated November 14, 1961, testimony at the trial indicated that Avon Lestar's wife did not sign the deed until several days later. The deed was recorded on November 21 by Avon Lestar's attorney who prepared the deed. Apparently no one other than the grantors and their attorney knew of the existence of the deed or the tranfer of the property, there being no actual delivery of the deed to the grantees. No written 10 year lease of the property to Virgil Mike Lestar was offered or received in evidence at the trial; nor was there any legal assumption of the mortgage indebtedness.

On November 15, the day Avon Lestar's promissory note to the Bank became due and payable, he shipped out the remainder of the cattle covered by the chattel mortgage securing payment of this note and subsequently sold them in South Dakota. After deduction of sales costs, he received a check

payable to him from the Bales Continental Commission Sales of Huron, South Dakota, in the amount of $16,619.54 representing the net proceeds.

Defendant Avon Lestar endorsed this check in blank, gave it to his wife, and she took it to the Bank. According to the defendants' testimony, Avon Lestar instructed his wife to take this check to the Bank and apply it to two notes secured by real estate mortgages on his ranch property so as to bring payments on them up to date and to apply the balance on the $25,500 promissory note owing to the Bank, all of which Mrs. Lestar did. According to plaintiff's testimony, Avon Lestar's wife gave them no instructions whatever concerning application of the funds represented by the check to the various items of her husband's indebtedness.

In any event, the check for $16,619.54 representing the proceeds of the cattle sale was turned over to Ervin Keirle, the son of Eph Keirle and an assistant cashier of the Bank, who credited $1,881 on the two notes secured by real estate mortgages and the remainder of $14,838.54 to the balance owing on the $25,500 promissory note to the Bank.

Later the same day Ervin Keirle went to the Lestar ranch, secured from Mrs. Lestar Avon's copy of the $25,500 note to the Bank on which the payment of $14,838.54 had previously been credited, and altered this to show a payment of $1,082.22 interest and $1,557.55 principal on that note. The difference was applied to pay in full the remaining indebtedness of Avon Lestar on the KHK account. From that time until suit was filed the Bank made repeated efforts to locate and communicate with defendant Avon Lestar and to locate the cattle covered by the chattel mortgage, all to no avail.

Thereafter the instant case was filed by the Bank on April 24, 1962. The complaint alleged that defendant Avon Lestar owed the Bank the sum of $23,942.54 principal on the $25,500 promissory note, interest, attorney fees and costs; that the property covered by the chattel mortgage securing this in-

debtedness had been sold or disposed of by defendant Avon Lestar; and that defendant Avon Lestar had conveyed his ranch property to his children in fraud of the Bank as his creditor. The Bank sought judgment for the amount alleged to be due on the promissory note and judgment setting aside Lestar's conveyance of his ranch property to his children as being in fraud of his creditors. Lestar's children were joined as parties defendant solely because they were named as grantees in the conveyance of the ranch property.

The defendants' answer admitted execution and delivery of the promissory note and chattel mortgage securing payment of the same; alleged partial payment of $13,654.22 principal and $1,082.32 interest on the promissory note; and admitted the conveyance of the ranch property from Avon Lestar to his children but denied that it was fraudulent as to creditors.

The case was tried in the district court of Fallon county. Some of the issues were submitted to the jury and some were decided by the court. The jury entered a verdict in favor of the Bank in the amount of $11,843.78, the amount defendant Avon Lestar contended was due on the note. Subsequently the court entered findings of fact and conclusions of law fixing interest and attorney fees due on the note and property by Avon Lestar to his children was not fraudulent as to his creditors. The final judgment entered was for $11,843.78 (the jury verdict on the note), interest of $2,866.56, attorney fees of $500, and costs. The Bank appeals from this judgment.

Two underlying issues are assigned for review on this appeal: (1) Did the district court commit reversible error in its instructions to the jury on application of the $16,619.54 to Avon Lestar's indebtedness? (2) Did the district court err in refusing to set aside the alleged fraudulent conveyance of Avon Lestar's ranch property to his children?

■■ Directing our attention to the first issue, we observe that it relates entirely to the Bank's action against defendant

Avon Lestar to collect the balance due on the promissory note. Lestar's defense at the trial was partial payment by special deposit. This is an affirmative defense and the burden of proving it is upon defendant Avon Lestar. Rule 8(c), M.R. Civ. P.; sections 93-401-26 and 93-1501-1, R.C.M.1947; Olson v. McLean, 132 Mont. 111, 313 P.2d 1039. This includes not only the burden of proving payment to the creditor, but also the burden of proving that such payment was made on the particular obligation in controversy. See Prins v. Van Der Vlugt, 215 Or. 682, 337 P.2d 787; Martin v. Pribil, 186 Okl. 27, 95 P.2d 853; Redwine v. Rohlff Lumber & Supply Co., 54 Wyo. 253, 91 P.2d 49; 70 C.J.S. Payment § 97, p. 303.

The jury must have found that defendant Avon Lestar proved by a preponderance of evidence the affirmative defense of partial payment by special deposit; otherwise their verdict could not stand.

As we understand it, the thrust of the Bank's objections to the jury instructions is that, in effect, they directed a verdict for defendant Avon Lestar on his defense of partial payment by special deposit. We agree.

Court's instruction No. 9 instructed the jury that Mrs. Lestar was a special agent of defendant Avon Lestar in her dealings with the Bank. Court's instruction No. 10 advised the jury "that an agency or the extent of an agency cannot be proved by the acts or declarations of the agent or a third person, but only be proved by the acts and declarations of the principal." Court's instruction No. 15 instructed the jury that if they found from a preponderance of the evidence that defendant Avon Lestar instructed his wife to apply the funds in partial payment of the promissory note sued upon "then you are instructed that Mary Etta Lestar was without any authority to apply said proceeds in any other manner and likewise the Baker National Bank and its Assistant Cashier Ervin H. Keirle, was without authority to apply said funds in any other manner." The net effect of these three instructions was

to tell the jury that if they found from a preponderance of the evidence defendant Avon Lestar instructed his wife to apply the funds in partial payment of the promissory note sued upon, neither Mrs. Lestar nor the Bank could apply them in any other way.

The difficulty with all this is that it is an incorrect, misleading and incomplete statement of the law as applied to the evidence in this case. We observe that even though the sufficiency of the evidence is not directly raised as an issue in this appeal, nevertheless the jury instructions must be considered in the context of the evidence offered. The quality of the evidence offered by defendants in this case tests the credulity of this reviewing Court; but taking it at its best in the light most favorable to defendants, the jury instructions are incorrect.

In the first place, the real issue in this case is confused by these instructions. The real issue is not whether Mrs. Lestar was a general or special agent, but whether she had general or limited authority to apply the funds to specific items of her husband's indebtedness.

In the second place, these instructions preclude the Bank from dealing with Mrs. Lestar as an ostensible agent of her husband. The Bank requested such an instruction which was refused. The Bank's evidence indicated that Mrs. Lestar appeared at the bank with a check made out to her husband in the amount of $16,619.54 and endorsed in blank by him, explained that her husband was ill in Rochester, exhibited a handwritten note signed by her husband authorizing her to pay on his indebtedness in the Bank, and gave no instructions whatever to the Bank concerning application of the funds to any specific indebtedness. As an agent has such authority as his principal ostensibly, as well as actually, confers upon him (section 2-122, R.C.M.1947), and as ostensible authority is such as a principal causes or allows a third person to believe the agent possesses (section 2-124, R.C.M.1947), the foregoing

instructions are incomplete and misleading and consequently erroneous.

Third, court's instruction No. 15, noted above, is an incorrect statement of the law. Avon Lestar's instructions to his wife on application of the funds, standing alone, does not divest the Bank of authority to apply the funds in some other manner. The Bank must have some knowledge of such instructions or at least some reason to believe that Mrs. Lestar's authority to apply the funds to her husband's indebtedness is limited. According to the Bank's evidence, it not only had no knowledge of Avon Lestar's instructions to his wife but had direct knowledge that there was no limitation on the application of the funds to any specific item of his indebtedness in the form of his endorsement of the check in blank coupled with his signed note authorizing Mrs. Lestar to apply it to his indebtedness at the Bank.

Compounding the error contained in court's instruction No. 15 was the court's refusal to give plaintiff's offered instruction No. 32 which was as follows:

"When a person indebted to another on more than one account makes a partial payment, the burden of proving that at or before the time of such payment he directed its application to a particular debt, and that this direction was made known to his creditor, is upon the debtor. "Therefore, if the defendants fail to prove by a preponderance of the evidence that Avon Lestar directed the November 30, 1961 payment be applied on the note here sued upon as claimed by them, or if the defendants fail to prove by a preponderance of the evidence that Avon Lester made such directions known to the Baker National Bank at or before the time of such payment, then you should find for the plaintiff."

This is a correct statement of the law as applied to the evidence here and refusal to give such instruction was error.

Broadly speaking, the error in the jury instructions noted above is that the jury is instructed, in effect, to measure

the Bank's authority to apply the funds in terms of the authority that Avon Lestar conferred on his wife without regard to whether that authority or its limitations were made known to the Bank. The prejudice to the substantial rights of plaintiff Bank from the foregoing instructions given and refused is obvious and constitutes reversible error.

The second issue assigned for review concerns whether the district court erred in its refusal to set aside the conveyance by Avon Lestar of his ranch property to his children as being in fraud of creditors. This issue was withdrawn from the jury's consideration and submitted to the court for decision. The district court entered findings of fact and conclusions of law determining in substance (1) that Avon Lestar was solvent at the time of the conveyance, and (2) that the conveyance was made for valuable consideration. Hence the district court concluded that the conveyence was not fraudulent as to Avon Lestar's creditors.

At the outset, we observe that the function of the Supreme Court upon appeal in a case of an equitable nature is to ''review all questions of fact arising upon the evidence presented in the record'' and determine the same ''as well as questions of law''. Section 93-216, R.C.M.1947. Although this Court is bound to review the evidence as well as the law, the review is limited to determining whether there is substantial evidence to support the trial court's findings of fact and whether such findings are sufficient to support the conclusions of law based thereon. Keller v. Martin, 153 Mont. 9, 452 P.2d 422; Bender v. Bender, 144 Mont. 470, 397 P.2d 957.

Before proceeding to review the evidence on which the findings of fact of the trial court are based, we note that the basic law applicable to determination of whether the conveyance in the instant case is fraudulent as to creditors is found in the Uniform Fraudulent Conveyance Act, section 29-104, R.C.M. 1947, which provides in material parts as follows:

''Every conveyance made * * * by a person who is or will

be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyence is made * * * without a fair consideration.''

Concerning solvency, the district court made this finding of fact:

''That the conveyence by Avon Lestar of his ranch property to his children on November 15, 1961, was made while the defendant Avon Lestar was in fact solvent having assets of a fair salable value apart from the land in question in the amount of Thirty-six Thousand, Six Hundred Eighty-seven and 11/100 Dollars ($36,687.11) and liabilities of Thirty-five Thousand, Four Hundred Seventy-three and 06/100 Dollars (35,473.06).''

Reviewing the evidence in the light most favorable to defendant Avon Lestar, this finding is simply not supported by the evidence. Giving Avon Lestar the benefit of all doubt on the evidence, his assets at the time of conveyance of his ranch property to his children consisted of the following:

| Horses | $ 7,723.95 |
| Machinery | 1,500.00 |
| Bank Account | 7,741.75 |
| Cattle | 19,721.21 |
| TOTAL ASSETS — | $36,686.91 |

Avon Lestar's liabilities at the time of conveyance were as follows:

| Admitted liabilities to Bank | $26,491.66 |
| Outstanding checks against bank acct. | 6,981.40 |
| Indebtedness to Federal Land Bank | 11,044.31 |
| TOTAL LIABILITIES — | $44,517.37 |

Thus, at the time of conveyance of his ranch property to his children, Avon Lestar's assets, exclusive of the ranch property, amounted to $7,830.46 less than his liabilities.

Apparently the basic difference between the totals set

56

forth above on assets and liabilities and those used by the district court is that we have included in Avon Lestar's liabilities the sum of $11,044.31 which he owed to the Federal Land Bank on a note secured by a real estate mortgage on the ranch property. It is undisputed that this was the amount owed on this obligation on November 14, 1961. Defendant Avon Lestar's evidence tended to indicate that this indebtedness was assumed by his son Virgil Mike Lestar, one of the grantees in the conveyence of the ranch property, under a 10 year lease that was never produced in evidence. Be that as it may, it is undisputed that defendant Avon Lestar remained the principal debtor on the Federal Land Bank note and they looked to him for payment. Avon Lestar cannot unilaterally relieve himself of this liability by any purported assumption of this obligation by his son without the consent of the creditor, Federal Land Bank, which was never obtained. Neither is there any evidence of Virgil Mike Lestar's ability to pay this indebtedness either at the time of the purported assumption thereof or at the time of the conveyance of the ranch property.

For the foregoing reasons, we hold that defendant Avon Lestar was insolvent as a matter of law at the time of the conveyance of his ranch property to his children.

The district court also made a finding that there was fair consideration for the conveyance of the ranch property as follows:

"That the conveyance by Avon Lestar of his ranch property to his children on November 15, 1961, was made for valuable consideration including the assumption of a mortgage by the grantee and the love and affection of a father for his children."

This finding is not supported by the evidence or the law. In the first place, the stated consideration in the deed is solely and only the sum of $1.00. Second, "love and affection" of the grantor for the grantees does not constitute valuable consideration for a conveyance. Ferrell v. Elling, 84 Mont. 384,

276 P. 432. The Uniform Fraudulent Conveyance Act provides that either property be exchanged or an antecedent debt be satisfied in order to constitute fair consideration. Section 29-103, R.C.M.1947. Third, there is no evidence that the conveyance of the ranch property was made in consideration of the assumption of the Federal Land Bank mortgage. On the contrary defendant Avon Lestar's evidence indicates that the assumption of the indebtedness secured by the Federal Land Bank mortgage by Virgil Mike Lestar resulted from a lease predating the conveyance. The deed itself provides that "Said conveyance is also made subject to a Mortgage to the Federal Land Bank of Spokane, a Corp. of Spokane, Washington, *which Mortgage is to be paid off by Virgil Mike Lestar, in accordance with the terms of said 10 year lease mentioned above.*" (Emphasis added.) The lease is referred to in the deed as being dated November 13, 1961. Avon Lestar's own testimony indicates that the Federal Land Bank indebtedness was assumed by Virgil Mike Lestar under the terms of a prior lease and not be virtue of the conveyance of the ranch property:

"A. That's right, yes. I didn't owe no more on the Federal Land Bank because that was secured by a lease, by Virgil Lestar for ten years. He was to pay the Federal Land Bank off for ten years.

Q. Had you previously leased the premises to Virgil? A. He had a lease on the place.

"Q. Since when? A. In 1961, November 13th of 1961, and the place was leased to Mike.

"Q. Mike had it leased before that? A. He had it leased in 1957 and that lease is still good too. The lease in November of 1961, the lease calls for that he was to pay the Federal Land Bank."

Additionally, Virgil Mike Lestar testified that he did not even know of the existence of the deed. He could hardly have assumed the mortgage indebedness in consideration of a conveyance he knew nothing about.

For the foregoing reasons we hold there was no fair consideration for the conveyance of the ranch property from Avon Lestar to his children as a matter of law.

■ Accordingly, because defendant Avon Lestar was insolvent and conveyed his ranch property to his children without fair consideration, we hold that such conveyance was fraudulent as to creditors and must be set aside.

The judgment of the district court dated February 16, 1967 awarding judgment to plaintiff Baker National Bank against defendant Avon Lestar on the promissory note is reversed and that claim for relief is remanded to the district court for a new trial.

The claim of plaintiff Baker National Bank against all defendants herein to set aside the conveyance introduced as plaintiff's exhibit A herein is remanded to the district court for entry of appropriate findings of facts and conclusions of law not inconsistent with the views expressed herein together with entry of judgment in favor of plaintiff and against defendants setting aside said conveyance as being in fraud of creditors.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, JOHN CONWAY HARRISON and BONNER, concur.