FARMERS ELEVATOR COMPANY OF RESERVE ET AL., PLAINTIFF AND APPELLANT, v. E. L. PHEISTER ET AL., DEFENDANTS AND RESPONDENTS.

No. 11344.
Submitted April 16, 1969.
Decided June 2, 1969.
455 P.2d 325.

Bjella, Jestrab, Neff & Pippin, Fred C. Rathert (argued), Williston, N.D., for appellant.

Habedank, Cumming & Best, Sidney, Baxter Larson (argued), Wolf Point, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This action is an appeal from a jury verdict determining there was no agency relationship between two of the defendants. It was commenced in the district court of the fifteenth judicial district of the state of Montana by the plaintiff-appellant grain companies, hereinafter called the Elevators. The cause was heretofore before this Court in an original proceeding for supervisory control in the matter of State ex rel. Farmers Elevator Co. v. District Court 147 Mont. 72, 410 P.2d 160.

The action was for the recovery of purchase price money due from the sale and delivery of barley to defendants, Glen Dockter and E. L. Pheister. The Elevators alleged that defendant-respondent Kern County Land Company, hereinafter referred to as Kern County, was the undisclosed principal of defendants Dockter and Pheister and as such was liable to the Elevators for the obligations of Dockter and Pheister· Separate actions were commenced in the counties of Daniels, Sheridan and Roosevelt and the matters were consolidated for trial. It should be noted here that the consolidated cases were contested between the Elevators as plaintiffs and the defendant Kern County without substantive participation by any of the other named defendants except the defendant United States Fidelity and Guaranty Company which admitted liability on its Grain Dealer or Track Buyer Bond. This bond was in the amount of $20,000.

At the trial, following submission of the case to the jury by special verdict, the jury found there was no agency relationship between Dockter and Pheister and Kern County. From the judgment entered the Elevators appealed.

The evidence presented at the trial established the following facts.

In 1963, 1964, and 1965 Kern County operated a livestock feed lot in Minatare, Nebraska. One Lawrence E. Hogen was the manager. During the course of that operation, under Mr.

Hogen's management, as many as 38,000 head of cattle were fed and maintained. This at times required more than 200 tons of barley per day.

In the course of buying some pipe for the feed lot, Mr. Hogen met Glen Dockter who became interested in supplying barley to Kern County even though he had had no previous experience in such a business. Dockter's first contract involved approximately 500 tons of barley and was completed in early 1964. On January 27, 1964 a written contract was signed between Kern County and Glen Dockter involving 4,500 tons. During the course of this contract, E. L. Pheister, an acquaintance of Dockter's, became involved. The two men subsequently formed a partnership for the purpose of their transactions in the grain business·

In June 1964 a second contract for 8,000 tons was entered into between Kern County and Dockter and Pheister. In August 1964 the partnership was dissolved and Dockter & Pheister, Inc., a corporation, came into being. Immediately thereafter, the two previous contracts having been fulfilled, as well as some additional oral arrangements, the corporation entered into the third and final written contract with Kern County which called for 40,000 tons of barley.

In general the operation of the business of Dockter & Pheister, Inc. went as follows: Dockter would locate barley in elevators at various places; this barley would be purchased and shipped to Minatare, Nebraska via trucks owned or leased by the corporation; if the barley met Kern County's requirements it would be accepted. Pheister would later come to Minatare, pick up a draft for the barley and deposit it in one of the corporation's several bank accounts. The drafts would often be made directly to Pheister but nevertheless were deposited in the name of the corporation.

As long as the price of barley plus operating costs, such as the cost of transportation, remained below the contract price with Kern County the corporation could make money. However,

Dockter & Pheister, Inc. apparently did not keep very good books and as a result they were never really aware of the actual costs of their operation. During one period when the price of barley was very high, a strike prevented the corporation from using its trucks and it was forced to deliver barley by rail, a more costly method. At such times, knowing they were losing money, Dockter would negotiate oral contracts as temporary substitutes for the written contract, at a price more favorable to the corporation.

The price of barley remained unusually high and in July 1965 Dockter & Pheister, Inc. ceased operation. At that time they owed several elevators, including the plaintiffs, money for grain that had been purchased and delivered but not paid for. Kern County, on the other hand, had already paid Dockter & Pheister, Inc. for all delivered barley·

During the course of these transactions the Elevators gave exclusive credit to Dockter & Pheister, Inc. and apparently did not know who was the party receiving the grain. There is a dispute in the evidence as to how much information Mr. Hogen had concerning the corporation's financial difficulties. There is also a dispute as to whether Mr Hogen ever advanced money to the corporation, prior to receipt of barley, for the purpose of enabling the corporation to purchase barley for Kern County's benefit.

The factual question presented by this case was whether the transactions were the purchase of barley for resale, or the purchase of barley for an undisclosed principal The Elevators have cited the controlling rule and applicable comment from Restatement of Agency 2d 14 K. The comment states in part:

"Factors indicating that the one who is to acquire the property and transfer it to the other is selling to, and not acting as agent for, the other are: (1) That he is to receive a fixed price for the property, irrespective of the price paid by him. This is the most important. (2) That he acts in his own name and receives the title to the property which he thereafter is to trans-

fer. (3) That he has an independent business in buying and selling similar property.''

If these factors are found, then the rule is:

''One who contracts to acquire property from a third person and convey it to another is the agent of the other only if it is agreed that he is to act primarily for the benefit of the other and not for himself.'' Restatement of Agency 2d § 14 K.

The sole question before this Court is whether there was substantial evidence from which the jury could find that no agency relationship existed. Keller v. Martin, 153 Mont. 9, 452 P.2d 422 (1969).

The first factor, that the transactions were purchase and resale and not agency, is whether the alleged agent received a fixed price for the property. It is undisputed that transactions under the first two written contracts and part of the third were governed by the contract price. However during the period of the third and largest contract, oral contracts with higher prices were substituted. The evidence is not clear whether this was because Kern County was willing to always provide Dockter & Pheister, Inc. with a profit margin or because, as Mr. Hogen implied, Kern County's need for barley forced it to accept the substitute contracts rather than rely on the contract price and take the risk of Dockter & Pheister Inc.'s default. This question was for the jury to decide.

There is no dispute that the second factor of purchase and resale, acting in their own name and receiving title, was the manner in which business was transacted. The Elevators admitted they never knew to whom Dockter & Pheister, Inc. was delivering the barley.

The third factor, the existence of an independent buying and selling business, was also shown by substantial evidence and any conflict was properly given to the jury to resolve. Mr. Hogen testified that Dockter & Pheister, Inc. did business with other grain purchasers. Mr. Dockter testified that 20,000 tons or one-fourth of their business was with purchasers other than Kern

County. Only Mr. Pheister, who admittedly was not familiar with all the details of the business, thought that they did ninety-nine percent with Kern County.

The Elevators also assert that Kern County had a right to control the operations of Dockter & Pheister, Inc. sufficient to establish an agency relationship. The written contracts only gave a right to determine the quality of the barley and the manner of its delivery. Admittedly, there is an implication in the testimony of both Dockter and Pheister that some control was exercised over where and when they could purchase barley. Mr. Hogen's testimony, of course, contradicts this but Mr. Pheister's testimony was that if Hogen did indicate not to purchase barley at a certain elevator, it was because the quality was below the contract standard. It was for the jury to accept or reject such inferences.

In fact, there was substantial evidence of the following: (1) Dockter initiated the sales of barley of his own volition after he had made his own investigation of the market. (2) The corporation, Dockter & Pheister, Inc., was established by Dockter and Pheister on the advice of Pheister's attorneys as a means of obtaining and selling barley. Dockter and Pheister were the only stockholders in their Wyoming corporation and the only corporation officers. (3) All business was done on the basis of buy and sell contracts, either written or oral. (4) Both Dockter and Pheister denied control of Dockter & Pheister, Inc. by Kern County except as to the quality of the barley and manner of delivery. (5) Dockter & Pheister, Inc. bought barley and was responsible for payment. (6) Exclusive credit was extended to Dockter & Pheister, Inc. by the Elevators. (7) Kern County made no financial advances to Dockter & Pheister, Inc., had no financial interest in it and made no loans to it. (8) All payments by Kern County to Dockter & Pheister, Inc. were through Pheister, as financial officer of the company, for barley purchased and all proceeds were deposited to the separate account of the corporation. (9) Dockter & Pheister, Inc. was not

158

authorized to act as agent for Kern County. (10) Kern County was free to and did obtain substantial portions of its barley needs from suppliers other than Dockter & Pheister, Inc. (11) Dockter & Pheister, Inc, was free to, and did, sell substantial quantities of barley to others than Kern County. (12) The financial condition of Dockter & Pheister, Inc. was not dis- ·ith Kern County until at the very end of the barley transactions when Dockter told Hogen they were going broke.

This evidence although not without conflict, was sufficient to support the jury verdict that no agency relationship existed between Dockter & Pheister, Inc. and Kern County.

The judgment of the lower court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, HASWELL and BONNER, concur.