No. 12125

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

FRED SCHMIDT, et al.,

               Plaintiffs and Respondents,

-vs-

DAVID NORTON et al.,

               Defendants and Appellants.

---

Appeal from: District Court of the Eighteenth Judicial District,
          Honorable James C. Freebourn, Judge presiding.

Counsel of Record:

    For Appellants:

        Morrow, Nash and Sedivy, Bozeman, Montana.
        Donald A. Nash argued, and Edmund P. Sedivy argued,
        Bozeman, Montana.

    For Respondents:

        Bolinger and Wellcome, Bozeman, Montana.
        G. Page Wellcome argued, Bozeman, Montana.

---

                    Submitted: April 18, 1972

                    Decided: JUN 6 1972

Filed: JUN 6 1972

_Thomas J. Kearney_
                   Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This appeal arises out of an action for a mandatory injunction and damages against the directors of a grazing association in denying a membership application therein to the prospective purchaser of plaintiff's membership. The case was tried without a jury before the district court of the eighteenth judicial district which entered findings of fact, conclusions of law, and judgment granting plaintiff a mandatory injunction and requiring the directors to approve the membership application, finding damages in favor of plaintiff in the sum of $2,925, and offsetting such damages against a like amount owed by plaintiff to the association for assessments. Defendant directors appeal from the final judgment.

Plaintiff is Fred C. Schmidt who became a member of the Brackett Creek Grazing Association in 1967, following his purchase of a ranch and membership in the association. In 1970, plaintiff sought to sell his association membership to A. D. O'Halloran, but the Board of Directors of the association refused approval of O'Halloran's membership application which gave rise to the instant suit, all of which is more fully set forth hereinafter. Defendants are the five directors of the Brackett Creek Grazing Association.

Brackett Creek Grazing Association (hereinafter referred to as the Association) is a Montana corporation, incorporated on August 17, 1964, for the purpose of obtaining a federal government loan, pursuant to the terms and provisions of the Farmers Home Administration Act of 1961, to enable it to buy a ranch for summer grazing for Association members. The five defendant directors were all original incorporators. The original thirteen incorporators felt a larger unit was needed to make it economically feasible to continue farming..Sometime in the latter part of 1963,

they went to the Farmers Home Administration (hereinafter referred to as FHA) supervisor in Bozeman for the purpose of attending numerous meetings and conferences on setting up the corporation. The personnel of the FHA assisted in forming the corporation and offered form copies of Articles of Incorporation and Bylaws. The forms used were standard FHA forms.

On December 10, 1964, the Association purchased a ranch consisting of approximately 11,000 deeded acres and certain leases from Robert T. Ward and Suzanne Ward for the sum of $450,000. At this time, the FHA approved a loan of $450,000 for the purchase of the ranch, and $23,000 for its development. Subsequently, the Association executed a mortgage to the United States of America, acting through the administrator of the FHA, as security for the repayment of the loan, and as additional security executed an assignment of certain grazing rights.

In administrating these lands, the Board of Directors of the Association at its annual meeting in April of each year would determine the carrying capacity of the land for the coming grazing year, and would then determine the number of animal units alloted to each member for grazing. Under the Association bylaws, the Board of Directors has the power and duty to levy assessments against the members for paying the Association's obligations.

Plaintiff became a member of the Association in 1967, by virtue of his purchase of a ranch and the accompanying Association membership from Mr. Goffney. At approximately the same time, plaintiff Fred C. Schmidt submitted an application for membership, which read:

> "Having land and livestock commensurate with Brackett Creek Grazing Association, I am applying for membership in the Association.
>
> "I agree to abide by the By-Laws and any other regulations adopted by the membership."

Plaintiff was then issued a membership certificate upon which was typed:

- 3 -

"Membership in this Association shall be transferable and subject to mortgage or pledge only upon the approval of the Board of Directors."

Plaintiff Schmidt acknowledged that he had received a copy of the bylaws.

During the spring of 1970, plaintiff placed his membership up for sale. He went to a real estate agent and within a short period of time entered into a buy and sell agreement with A. D. O'Halloran fixing a $5,500 purchase price on the Association membership with $1,000 paid to the agent as earnest money by O'Halloran. The buy and sell agreement provided that if the application by O'Halloran for membership was not approved by the Board of Directors of the Association, then the $1,000 would be returned forthwith to O'Halloran.

Plaintiff obtained application forms from the Association and gave them to O'Halloran to fill out. The completed forms were submitted to defendant Norton, the president of the Association. O'Halloran's application was considered by the Board of Directors on April 10, 1970, and upon review of the application the directors decided to take thirty days to investigate the application. The financial statement, a part of the application, had not been signed by O'Halloran, nor had he used all the forms provided him.

On May 9, 1970, the Board again considered O'Halloran's application. At that time, the Board had received information that O'Halloran was renting out some of his land. The minutes of the May 9, 1970 meeting reflected a determination by the Board of Directors that O'Halloran was not a family farm operator, as defined in Article III, Section 7, Subparagraph A(3), of the Association's bylaws, which reads:

"A. ELIGIBILITY FOR MEMBERSHIP. Eligibility for membership shall be based on the following requirements:

- 4 -

"\* \* \*

"(3) Be operators of family size farms, with rights as to length of tenure and proximity of location to the grazing controlled by the Association, sufficient in the judgment of the Board of Directors, to enable the applicant to make full beneficial use of the grazing and services furnished by the Association. A family size farm shall be construed to mean a farm operated by one family which provides the entire management and more than fifty percent of the labor for such operation."

The same requirement is also found in Article V, Section 3 of the Association's Articles of Incorporation.

On June 15, 1970, a second application was submitted by O'Halloran, which stated O'Halloran was leasing 1,600 acres of his total 2,650 acre ranch to a Mr. Logan on a percentage lease. This second application differed from O'Halloran's first application as to certain financial figures. The Board met to consider this application on July 6, 1970, and thereupon requested O'Halloran to resubmit the application fully filled out.

On July 10, 1970, the Board reviewed O'Halloran's third application, which again set forth the fact that more than one-half of his ranch land was leased out. The Board then denied O'Halloran's application for membership on the basis that he was not eligible for membership as/he did not qualify as a family farmer. The Board's reasoning was that since O'Halloran was leasing out more than one-half of his land, he was therefore not providing the entire management and more than fifty percent of the labor for his ranch. The Board advised O'Halloran of its decision by letter dated July 14, 1970.

Later in July 1970, plaintiff filed the instant suit in four separate counts. In the first count plaintiff sought a mandatory injunction against the five named director defendants alleging that their denial of O'Halloran's application for membership in the Association was arbitrary and unreasonable.

- 5 -

The second count alleged that the Bylaws and Articles of Incorporation were void, invalid, and unenforceable as an unlawful restraint of trade. The third court claimed damages in the amount of $4,000, based upon the alleged unreasonable and arbitrary refusal to accept O'Halloran's membership application, whereby plaintiff was allegedly deprived of the use of his grazing privileges in the Association. In the fourth count plaintiff sought damages of $5,500, as an alternative to a mandatory injunction.

It should be mentioned here that the second count, alleging the Association's Articles of Incorporation and Bylaws to be void, was apparently abandoned at trial and not considered by the district court in its decision, and is not raised as an issue in this appeal.

Defendants' answer contained a general denial of the substance of plaintiff's allegations, coupled with admissions of the basic facts concerning the events that transpired in connection with O'Halloran's membership application.

The principal position of plaintiff at the trial, as well as upon appeal, was that the Board of Directors of the Association arbitrarily and without just cause refused to approve the transfer of plaintiff's Association membership to O'Halloran, thereby entitling plaintiff to the relief sought.

On the other hand, the thrust of defendants' principal contention at the trial, as well as upon appeal, was that O'Halloran was not qualified for membership in the Association because he did not operate a family size farm as defined by the Association bylaws, and accordingly the directors' denial of his membership application was not arbitrary but for just cause, thereby precluding plaintiff's claims for relief.

Following trial, the district court entered findings of fact, conclusions of law, and judgment for plaintiff. The gist

of the findings was that O'Halloran had satisfied membership requirements of the Association and the action of the Board of Directors in denying his membership application was arbitrary. The conclusions of law offset the 1970 grazing assessments owed by plaintiff to the Association against an equal amount of damages awarded plaintiff. Judgment was entered granting a permanent mandatory injunction requiring the directors to approve O'Halloran's membership application and awarding costs to plaintiff. Defendants appeal from the final judgment following the district court's denial of defendants' exceptions to the findings and conclusions and motion to amend same.

Defendants assign four issues for review upon appeal, which can be summarized in this manner:

1. Sufficiency of the evidence to support the district court's findings that O'Halloran satisfied the membership requirements of the Association and that the Board of Directors arbitrarily denied his membership application.

2. Is plaintiff entitled to a mandatory injunction?

3. Is plaintiff entitled to a damage award?

4. Are the 1970 assessments owed by plaintiff to the Association germane to this action?

The first issue for review poses the principal and controlling issue on appeal: Did O'Halloran meet the membership qualifications of the Association? If he did, he is entitled to membership and the directors' denial of his membership application was arbitrary entitling plaintiff to relief. Conversely, if O'Halloran did not meet the membership qualifications, he is not entitled to Association membership in any event, irrespective of the directors' action on his membership application.

Plaintiff contends the district court's finding that O'Halloran satisfied all the requirements for membership in the Association set forth in its bylaws is supported by the evidence, and that defendants' contention to the contrary is based entirely

- 7 -

on the fact that O'Halloran was temporarily leasing out 1,660 acres of his 2,650 acre ranch. Plaintiff claims this does not disqualify O'Halloran as the operator of a "family size farm" under the bylaw definition thereof: "a farm operated by one family which provides the entire management and more than fifty percent of the labor for such operation." Plaintiff further contends that in any event, at the time of trial O'Halloran had cancelled the lease except for the harvesting of growing crops.

The pertinent findings of fact made by the district court on this question are contained in findings of fact XI and XII, which we quote verbatim:

"XI. That Mr. A.D. O'Halloran operates a farm and ranch in Park County, Montana, which is in closer proximity to the lands owned by the Brackett Creek Grazing Association than any lands owned by the majority of the other members of the Brackett Creek Grazing Association and in closer proximity than the lands owned by all of the Directors of the Brackett Creek Grazing Association; that Mr. A.D. O'Halloran is a citizen of the United States; that he possesses the legal capacity to incur the obligations of the membership in the Brackett Creek Grazing Association; that he operates a farm with his family and he and his family provide the entire management for the farm and ranch operation and provide more than fifty per cent (50%) of the labor for such operation, the only outside labor being sporadic help during only a limited time during the year; that the applications for membership which Mr. O'Halloran filed, and which were checked by the Board of Directors with his bank in Livingston, Montana, indicate that he has on his own, and by secured credit, ample resources to obtain membership and cattle for the grazeland owned by the Brackett Creek Grazing Association; that Mr. A. D. O'Halloran possesses character, industry and agricultural ability.

"XII. That Mr. A. D. O'Halloran satisfies all of the requirements for membership in the Brackett Creek Grazing Association set forth in the Bylaws of such Association and he is the operator of a family size farm; that the actions of the defendants in rejecting the application of Mr. A. D. O'Halloran for membership in the Brackett Creek Grazing Association were arbitrary and the prolonged consideration of the various applications for membership caused the plaintiff damages by his inability to sell his membership for use by the purchaser during the 1970 grazing season or to obtain cattle himself to put upon the lands of the Brackett Creek Grazing Association."

The membership qualifications of the Association are set forth in its Articles of Incorporation and Bylaws. The pertinent provisions are:

"ARTICLE V   [ARTICLES OF INCORPORATION]

"* * *

"Section 3. Membership in this Association shall be limited to operators of family-size farms, with rights as to length of tenure and proximity of location to the grazing controlled by the Association, sufficient in the judgment of the Board of Directors, to enable such operators to make full beneficial use of the grazing and services furnished by the Association. A family-size farm shall be construed to mean a farm operated by one family which provides the entire management and more than fifty percent of the labor for such operation."

"Article III---Members [BY-LAWS]

"* * *

"Section 7. * * *

"A. ELIGIBILITY FOR MEMBERSHIP * * *

"(3) Be operators of family size farms, with rights as to length of tenure and proximity of location to the grazing controlled by the Association, sufficient in the judgment of the Board of Directors, to enable the applicant to make full beneficial use of the grazing and services furnished by the Association. A family size farm shall be construed to mean a farm operated by one family which provides the entire management and more than fifty percent of the labor for such operation."

The evidence clearly shows O'Halloran did not provide more than fifty percent of the labor for the whole operation of the farm, nor did he provide the entire management of the farm. O'Halloran's second and third application forms, plaintiff's Exhibits 4 and 6, state that O'Halloran was farming 990 acres and leasing 1,660 acres. O'Halloran represented in these applications that he had a written lease with T. E. Logan for 1,660 acres, in which O'Halloran would receive one-half of the hay, one-third of the grain, and forty percent of the calf crop. However, the record shows O'Halloran did not provide more than fifty percent of the labor for the whole operation of the farm, nor did he provide the entire management. The requirements of providing the entire management and more than fifty percent of

the labor are clearly and unequivocally spelled out in the Articles of Incorporation and Bylaws of the Association.

Plaintiff's position is that the Articles of Incorporation and Bylaws of the Association should be interpreted to allow an operator to lease out as much of his land as he wishes, retain a portion of land for his own use, and still qualify as an operator of a family size farm within the purview of the Articles of Incorporation and Bylaws on the basis that he provides the labor and entire management of the land which he does not lease out. This construction would render the language and purposes of the Articles of Incorporation and Bylaws meaningless. The "entire management" and "more than fifty percent of the labor" provisions must have been adopted for the purpose of affording some specific limitation to eligibility of membership in the Association.

It seems both logical and consistent for a rancher's or farmer's operations to include not only the land he owns and leases from others, but also that part of his ranch or farm leased to others on a "crop-share" basis, wherein the agricultural products derived from the leased land constitute part of his total operation. If this Court were to interpret the eligibility requirements as allowing a party to lease out more than fifty percent of his land, and then claim he managed one hundred percent of what was left, thus becoming eligible for the FHA loan program, such circumvention would subvert the very purposes of the FHA loan program; namely, to assist small farmers in need of expanding their operations. It is important to note that the FHA loan program requires the eligibility requirements as set forth in the Brackett Creek Grazing Association's Articles of Incorporation and Bylaws.

We further find no merit in plaintiff's corollary argument that at the time of trial O'Halloran testified he had recently cancelled his lease with Logan. The district judge quite properly

excluded this testimony for the obvious reason that it had nothing to do with O'Halloran's membership application or with the action of the directors thereon.

In reviewing equity type cases on appeal, this Court recently summarized its rules in Baker National Bank v. Lestar, 153 Mont. 45, 54, 453 P.2d 774:

> "At the outset, we observe that the function of the Supreme Court upon appeal in a case of an equitable nature is to 'review all questions of fact arising upon the evidence presented in the record' and determine the same 'as well as questions of law'. Section 93-216, R.C.M. 1947. Although this Court is bound to review the evidence as well as the law, the review is limited to determining whether there is substantial evidence to support the trial court's findings of fact and whether such findings are sufficient to support the conclusions of law based thereon. Keller v. Martin, 153 Mont. 9, 452 P.2d 422; Bender v. Bender, 144 Mont. 470, 397 P.2d 957."

Here, the district court's ultimate findings of fact that O'Halloran is the operator of a family size farm and accordingly satisfies all the requirements for membership in the Association is not supported by the evidence simply because the district court misconstrued the meaning of the membership qualifications contained in the Articles of Incorporation and Bylaws.

One further matter merits comment. It is at least suggested in the brief and oral argument of plaintiff that the real reason the directors denied O'Halloran's membership application had nothing to do with his qualifications, but was motivated by financial considerations. Plaintiff points out testimony that at one time during the process of filing applications on behalf of O'Halloran, plaintiff offered to sell his membership to the Association for $4,200, rather than to O'Halloran for $5,500, but the directors insisted that plaintiff would have to pay his 1970 assessment which, according to plaintiff, would enable the Association to acquire his membership for $3,300 to $3,400 less than its market value. Plaintiff also points out the prolonged consideration by the directors of the O'Halloran membership applica-

tions which placed plaintiff in a difficult position to protect himself.

In our view these considerations are not germane to the controlling issue in this case. Where, as here, O'Halloran did not meet the membership requirements of the Association, no act of the directors could change the facts nor render him eligible for membership. Accordingly, the directors' denial of O'Halloran's membership application, for whatever reason, was not the controlling cause of plaintiff's claims. The ineligibility of O'Halloran was.

Concluding as we have that O'Halloran did not meet the qualifications for membership in the Association, and further finding that all of plaintiff's claims for relief in the instant case are predicated upon O'Halloran's eligibility for membership, it is unnecessary to consider the remaining issues for review, as plaintiff cannot prevail in any event.

The judgment of the district court is reversed and the case dismissed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____
Associate Justices

Mr. Justice Wesley Castles dissenting:

I dissent. The district court, in my view, correctly assessed the testimony. The trial judge had the advantage of seeing and hearing the witnesses. A case should not be reversed where there is substantial evidence to support the findings. Larson v. Burnett, _____ Mont._____, 492 P.2d 921, 29 St.Rep. 22.

Here, after many evasive answers, the Board members finally admitted that the only reason for turning down O'Halloran's application was that he leased part of his land on a crop-share basis. O'Halloran testified that farming is the sole source of his livelihood for him and his family, that he is a family farmer. A lease should be treated no differently than any other investment. O'Halloran is clearly an individual operator.

At one point during the process of filing applications on behalf of O'Halloran, plaintiff offered to sell his share of stock to the Association for $4,200. This was done on May 19, 1970, at the beginning of the grazing season.

The directors determined that they would purchase plaintiff's stock but Schmidt would have to pay the yearly assessment thereby netting plaintiff $1,100 to $1,200 on the sale when he had a valid offer of $5,500 with earnest money put down. In this manner the Association would absorb the share for $3,300 to $3,400 less than the market value. The district court having heard and observed the witnesses properly held that in this and their other determinations the directors acted arbitrarily and there was no reason under the Association's bylaws to disqualify O'Halloran from membership since he met all of the requisite qualifications for membership.

I would affirm the judgment.

_Wesley Castles_
                    Associate Justice.