No. 82-94

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

INSURANCE SPECIALISTS, INC.,

Plaintiff and Respondent,

vs.

DALE LONGFELLOW,

Defendant and Appellant.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

For Plaintiff:

Law Offices of Russell K. Fillner; Russell K. Fillner,
Billings, Montana

For Defendant:

Towe, Ball, Enright & Mackey; Neil D. Enright, Billings,
Montana

Submitted on briefs: July 29, 1982

Decided: OCT 2 7 1982

Filed: OCT 27 1982

Thomas J. Kearney
Clerk

Longfellow still owes $1,709.63 on the note. Longfellow counterclaimed that 762 service contracts should have been credited to his account. According to Longfellow, not only is the promissory note fully paid, but ISI owes him $1,810 in commissions. The District Court found that the evidence did not support Longfellow's counterclaim.

Longfellow raises two seemingly contradictory issues on appeal. First, he claims the District Court erred by apparently not construing the promissory note and the underlying agreement (letter) as one instrument. Then, in the second issue, he claims the District Court erred by misinterpreting the underlying agreement.

There is nothing in the record to support appellant's first contention that the District Court failed to construe the promissory note and the underlying agreement together. Nearly all of the evidence at trial went to the construction of the underlying contract, and determining who had referred which car dealers to ISI. We need not consider this issue since it is not based on the record.

In his second issue, Longfellow basically claims that the District Court misinterpreted the word "referred" as it is used in the underlying agreement. Longfellow contends that his uncontroverted testimony showed he referred certain car dealers to ISI, and therefore he should be credited with the service contracts sold by those dealers. According to Longfellow, evidence that another agent for ISI also referred car dealers to ISI is irrelevant because the contract does not require that Longfellow be the sole person making the referrals.

Longfellow's contention must fail simply because it is not supported by the record.

It is elementary that each party must prove his own affirmative allegations. Section 26-1-401, MCA, and section 26-1-402, MCA. The claim of satisfaction on a promissory note is an affirmative allegation and must be proved by a preponderance of

the evidence. Baker National Bank v. Lestar (1969), 153 Mont. 45, 453 P.2d 774; E.H. Coltharp & Co. v. Taylor (1974), 30 Utah2d 448, 519 P.2d 885. Here, appellant Longfellow simply did not meet this burden.

At trial, appellant's case consisted of his own vague testimony and the noncommittal testimony of one car dealer.

Longfellow testified that prior to May 1978 he had worked for Gamut Insurance Company and most of the car dealers in the Billings area were his customers. Specifically, Longfellow testified that prior to May 1978 he referred Arnlund Auto Plaza, Ryan Oldsmobile, Midland Dodge, D-J Volkswagen, Town and Country GMC, and Capital Ford in Helena, to Gamut Insurance. After May 1978, when Longfellow made the loan agreement with ISI, Longfellow began to make referrals for ISI through the local car dealers. He testified that he had nearly daily contact with every car dealer in Billings and had repeatedly referred them to ISI. He gave no specifics concerning when the referrals took place and introduced no evidence showing how many service contracts resulted from these referrals. Longfellow just made the broad statement that he referred all of his previous Gamut customers to ISI, including Arnlund Auto Plaza, Ryan Oldsmobile, Bob Smith Autos and Midland Dodge.

The only other evidence submitted by Longfellow was the testimony of David Pierce, manager of Arnlund Auto Plaza. The following testimony by Mr. Pierce is very telling:

> "Q. Did Mr. Longfellow refer Plaintiff, Insurance Specialists Incorporated, and AWC to you? A. Cliff Tophem -- We had been dealing back and forth with Dale and Cliff, and at the time I would say were competitors. And in dealing with Dale, we had signed with some of his companies. And he had the Ming Center and Dale worked with cars there. And it was a convenient location for us. And we did do business with him at the Ming Center, also. Cliff called on us numerous times. He was with one and then switched to another. And Dale was working at the Ming Center. And I did talk to him. I called him and asked him about Cliff, because we were thinking of dropping the other two companies entirely. And he did say that Cliff would service the account and do a good job for us. And I kind of felt that

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Dale Longfellow, the maker of a $2,000 promissory note in favor of Insurance Specialists, Inc., appeals from a judgment issued by the District Court of the Thirteenth Judicial District, Yellowstone County. The District Court found that Longfellow's counterclaim of satisfaction on the note was not supported by the evidence and granted judgment for Insurance Specialists, Inc. in the amount of $2,262.84.

Appellant Longfellow is an insurance agent. One type of insurance contract he helps to sell is the extended warranty service contract issued by Insurance Specialists, Inc. (ISI) through automobile dealers. Insurance Specialists issues these contracts under the name, Automobile Warranty Corporation (AWC). Longfellow participates in the selling of these contracts by "referring" the car dealer to the insurance company he represents, in this case, ISI.

On May 1, 1978, ISI lent Longfellow $2,000 for a promissory note due on May 1, 1980. Both parties admit that a letter sent to Longfellow by the president of ISI is part of the loan agreement. The letter contains the following relevant provisions:

> "1. It is agreed that we will credit your promissory note at the rate of $5 per Automobile Warranty Corporation service contract issued and paid to Automobile Warranty Corporation from your Montana dealers that are referred to us by yourself during the period of 5/1/78 through 5/1/80.

> "2. If the total service contracts are 400 or more, then the note is paid off in full. Anything less than 400 will leave a balance due and payable as of 5/1/80. If the total number of service contracts exceeds 400, your promissory note will be paid off and you will receive an additional $5 for every contract over that amount during the period of time indicated."

The controversy here centers upon how many service warranty contracts should have been credited to the debt Longfellow owed on the promissory note. ISI claims, and the District Court found, that after deducting all possible commissions,

- 2 -

Cliff would. He would have been very per-
sistent in trying to obtain our business upon
that recommendation and talking with Burt we
did go with AWC."

On rebuttal, ISI presented the key testimony of Cliff Tophem. Tophem testified that he too began working for ISI in May or June 1978, after having represented a different insurance company. Tophem countered Longfellow's claims by stating that he, not Longfellow, had solicited the car dealers in Billings. Tophem's testimony was buttressed by the introduction into evidence of six "Dealer Agreement" contracts.

In these dealer agreements, a car dealer is authorized to issue ISI (a/k/a AWC) service contracts and receive a commission. Tophem stated that he had negotiated the agreements, writing in the specific terms. Four of the agreements were signed by Tophem as an approved special representative for ISI. In all, Tophem had negotiated dealer agreements with Arnlund Auto Plaza, Ryan Oldsmobile, Town and Country GMC, Car Market, Giv-Way Auto Sales, and Bob Smith Lincoln Mercury.

Tophem's specific testimony, Dave Pierce's testimony and the documentation introduced at trial support the District Court's finding that Longfellow's counterclaim is without merit. This evidence also supports the conclusion that the car dealers used ISI contracts mainly because of Tophem's efforts. Lastly, this evidence implicitly supports the conclusion that Tophem and Longfellow were competing for the commissions on the service contracts, and that the commissions properly went to Tophem.

In contrast, Longfellow's case was supported only by his own vague testimony. No evidence was introduced at trial showing when Longfellow made his referrals and which service contracts resulted from these referrals.

The District Court had no evidence at trial to determine specifically how much Longfellow should receive in commissions. No specific documentation in the trial records supports appellant's counterclaim that 762 service contracts must be credited against the promissory note.

- 5 -

As stated previously, the burden was on Longfellow to prove his counterclaim by a preponderance of the evidence, and he has not done so. Therefore, the District Court properly denied his counterclaim and properly granted judgment to ISI.

ISI admits that the District Court imposed an improper annual interest rate of 10 percent, since the promissory note requires an 8 percent per annum interest rate.

The District Court is directed to amend its judgment to conform to this Opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices