NO.   95-553

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

LEE WAREING AND DONNA WAREING,

       Plaintiffs, Counter-
       Defendants and Respondents,

  v.

CLYDE SCHRECKENDGUST

       Defendant, Counterclaimant
       and Appellant.

FILED

DEC 13 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Twenty-First Judicial District,
        In and for the County of Ravalli,
        The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Dirk A. Williams, Church, Harris, Johnson &
           Williams, Missoula, Montana

       For Respondent:

           Walter E. Congdon, Congdon Law Office, Missoula,
           Montana

Submitted on Briefs:  August 1, 1996

Decided:  December 13, 1996

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from the Twenty-First Judicial District Court, Ravalli County. Following a bench trial, the District Court awarded Plaintiffs, Lee and Donna Wareing, a prescriptive ditch easement across Schreckendgust's property, costs and attorney fees. Additionally, the District Court ordered the parties to equally share the costs of replacing the ditch culvert crossing Defendant Schreckendgust's property. Defendant Schreckendgust appeals. We affirm.

**We restate the issues on appeal as follows:**

1. Must the elements of a prescriptive easement be proved by a preponderance of evidence or by clear and convincing evidence?

2. Did the District Court err in concluding that Wareings established all elements of their prescriptive ditch easement claim?

3. Under the doctrine of estoppel, are Wareings precluded from asserting a prescriptive easement right against Schreckendgust after they acquired an express ditch easement from a neighboring landowner over property previously owned by Schreckendgust?

4. Did the District Court err when it failed to expressly limit the scope of Wareings' prescriptive ditch easement both as to location and method of maintenance?

5. Is Schreckendgust entitled to attorney fees under § 70-17-112, MCA?

6. Should this case have been remanded for a new trial?

2

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, Lee and Donna Wareing, (Wareings) own real property situated in a portion of the SE1/4 of Section 11, Township 10 North, Range 20 West, P.M.M., Ravalli County, Montana, lying east of the right of way of Montana Rail Link. They acquired their property in 1960. Defendant Clyde Schreckendgust (Schreckendgust) owns real property situated in the W1/2 of Section 11, Township 10 North, Range 20 West, P.M.M., Ravalli County, Montana. Schreckendgust acquired his property' from his father in 1962. Wareings' property lies east of Schreckendgust's property. See Appendix A for a map of the relevant portions of the parties' properties. This map is an overlay on the relevant township map derived from the Water Resources Survey, Ravalli County, Montana, State Engineer's Office (Helena, Montana, June 1958) (Map 31).

Wareings' property is irrigated by water flowing from One Horse Creek through the "Samuel Miller Ditch" (ditch) that crosses various properties, including property owned by Schreckendgust. Specifically, the ditch crosses two lots owned by Schreckendgust, described as Florence Orchard Homes Lots 19 and 20. Between these lots and Wareings' property is Florence Orchard Homes Lot 38, previously owned by Schreckendgust, but acquired by Steve Schertenleib in 1988. Also between the parties' properties lies a Ravalli County road, U.S. Highway 93 and the Montana Rail Link railroad right-of-way.

As it crosses Schreckendgust's Lots 19 and 20, the irrigation ditch flows through a concrete culvert under an old airstrip. As

the ditch crosses Florence Orchard Homes Lot 38, it enters an underground pipeline installed by Schertenleib. After exiting Lot 38, the irrigation ditch, through a series of culverts, crosses under a Ravalli County road, U.S. Highway 93 and the Montana Rail Link railroad right-of-way to reach Wareings' property.

Samuel Miller is Wareings' original predecessor in interest for most of their affected property. Samuel Miller conveyed his property to Ambrose Miller in 1897, and Ambrose Miller in turn conveyed the property to William E. Gleason and Lorenzo A. Gillett in 1898. After Gillett conveyed his interest in the property to Gleason in 1913, Gleason sold various parcels of the property to others. In the 1940s and 1950s, Ed Martin owned the bulk of the property. In 1960, Wareings acquired their property from Ed Martin.

After 1904, but long prior to 1957, the present "Samuel Miller Ditch'! was installed and/or extended to what is now Wareings' property. Gleason used the ditch to convey irrigation water from the 1930s on, and, subsequently, Ed Martin used the ditch continuously to irrigate his property during the 1940s and 1950s. Finally, Wareings have used the ditch for irrigation purposes since 1960. During this period of use, Wareings maintained the ditch by shovel and hand cleaning. Neither Wareings, nor their predecessors-in-interest, expressly sought Schreckendgust's permission to use the ditch. Instead, they notified Schreckendgust when they intended to run water through the ditch. Such notification was a neighborly custom in the area.

4

In 1947, Schreckendgust built an airstrip on his property. Where the airstrip crossed the ditch, Schreckendgust installed, at his own expense, a reinforced concrete culvert in the ditch. Lee Wareing testified that in April 1990 he called Schreckendgust in Florida to complain that the 80-foot long culvert, located below Schreckendgust's airstrip, was obstructed by boulders and other debris. Schreckendgust declined to personally have the culvert cleaned and told Wareing to do whatever he needed and so Wareing had his ranch foreman do the work. To clean the culvert, Wareings' worker found it necessary to knock holes in the top of the culvert to clear the obstructions. After this initial cleaning, vandals broke out more sections, thereby obstructing the culvert again, which led Wareings' worker to break out more top pieces to successfully clear the culvert. After returning to his property, Schreckendgust found it necessary to replace the broken culvert.

Wareings initiated this law suit against Schreckendgust through an application for temporary restraining order and preliminary injunction dated August 13, 1991. Wareings alleged that Schreckendgust's replacement of the airstrip culvert would take some days to complete and would interrupt water flow through the ditch and Wareings would be without water for irrigation and livestock. Schreckendgust prevailed on his motion to quash the temporary restraining order and successfully defended against Wareings' application for a preliminary injunction on October 18, 1991. Schreckendgust then filed an answer and counter-claim on July 17, 1992. In his answer, Schreckendgust raised several

affirmative defenses and denied all allegations set out in Wareings' application for temporary restraining order and preliminary injunction. In his counter-claim, Schreckendgust sought damages for destruction of the concrete culvert on his property, damages for trespass, a decree quieting title to Lots 18-24, 33-36, 39 and 40, Florence Orchard Homes, Ravalli County, and an order enjoining Wareings from entering Schreckendgust's real property.

On December 19, 1994, this case was heard by bench trial in the Twenty-First Judicial District Court, Ravalli County, Montana. Immediately prior to testimony being given during trial, the parties stipulated that Wareings could file their complaint wherein Wareings alleged that they, either by prescription, specific grant or reservation, held an easement for the ditch crossing Schreckendgust's property. Furthermore, the District Court considered Schreckendgust as having denied all allegations in the complaint. On May 15, 1995, the District Court entered its Findings of Fact, Conclusions of Law and Order. The District Court concluded that Wareings had established a prescriptive easement for an irrigation ditch across Schreckendgust's property and awarded them costs and attorney fees. Additionally, the District Court held that each party was responsible for fifty percent of the cost of replacing the culvert located on Schreckendgust's property. Finally, after considering Schreckendgust's objection to certain costs and attorney fees, the District Court entered its final Opinion, Order and Judgment on October 30, 1995. Therein, the

District Court offset certain costs and attorney fees and directed Schreckendgust to pay Wareings a reduced net amount of costs and attorney fees. From these judgments, Schreckendgust appealed.

For reasons set forth in our discussion of Issue 1, on May 14, 1996, we remanded this case to the District Court with instructions to reconsider its decision applying the clear and convincing burden of proof. On June 10, 1996, the District Court filed its Amended Findings of Fact and Conclusions of Law. On June 18, 1996, we granted counsel for the respective parties the opportunity to file supplemental briefs with regard to the District Court's Amended Findings of Fact and Conclusions of Law. Counsel for the parties did so. We now consider both the initial issues on appeal as well as the issues raised in the supplemental briefs.

STANDARD OF REVIEW

Our standard of review for a district court's findings of fact is provided by Rule 52(a), M.R.Civ.P., which in part provides:

> Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

We have adopted the following three-part test to interpret this rule:

> First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed."

7

Public Lands Access Ass'n, Inc. v. Boone and Crockett Club Found. (1993), 259 Mont. 279, 283, 856 P.2d 525, 527 (quoting Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287).

Our standard of review for a district court's conclusions of law is whether the tribunal's interpretation of the law is correct. Public Lands, 820 P.2d at 527.

DISCUSSION

1. **Must the elements of a prescriptive easement be proved by a preponderance of evidence or by clear and convincing evidence?**

Our standard of review for a district court's conclusions of law is whether the tribunal's interpretation of the law is correct. Public Lands, 820 P.2d at 527. On appeal, Schreckendgust originally contended that the District Court erred by basing its opinion on a preponderance of the evidence rather than on clear and convincing evidence to award Wareings a prescriptive easement over Schreckendgust's property. After researching the issue, we agreed. Consequently, in our May 14, 1996 Order, we remanded the case to the District Court with instructions to reconsider its findings of fact and conclusions of law based on the existing record and applying the clear and convincing burden of proof.

Our research revealed two differing lines of authority as regards the burden of proof in prescriptive easement cases. This is the first case, however, that has raised this anomaly directly. In fact, in most of the prescriptive easement cases that have previously come before this Court on appeal, burden of proof is not

8

even mentioned parenthetically, and it is impossible to tell what burden was utilized by the trial court and litigants. Accordingly, it is necessary that we clarify the law regarding the proper burden of proof in prescriptive easement cases.

In Kostbade v. Metier (1967), 150 Mont. 139, 143, 432 P.2d 382, 385, following a long line of Montana cases, we stated that a party asserting a prescriptive easement must prove his claim by clear and convincing evidence. Moreover, in Warnack v. Coneen Family Trust (1994), 266 Mont. 203, 216, 879 P.2d 715, 723, we stated that the party asserting a prescriptive easement must prove each element of the claim.

In Downing v. Grover, however, without any analysis or reference to Kostbade, we stated that "[a]ll elements of prescriptive easement must be proved by a preponderance of the evidence or the claim will fail." Downing v. Grover (1989), 237 Mont. 172, 175, 772 P.2d 850, 852 (citing Grimsley v. Estate of Spencer (1983), 206 Mont. 184, 670 P.2d 85). We again adopted this lower burden of proof in Brown v. Tintinger (1990), 245 Mont. 373, 377, 801 P.2d 607, 609 (citing Downing, 772 P.2d at 852), without any apparent recognition of the existence of a contrary line of authority.

In Downing, a landowner sued an adjoining landowner seeking to establish a public road across the adjoining landowner's property or alternatively a public or private prescriptive easement. When we addressed the prescriptive easement claim, we stated:

> The burden at trial on the party seeking to
> establish the prescriptive easement is to show

1)    open
2)    notorious
3)    exclusive
4)    adverse
5)    continuous, and
6)    uninterrupted use
of the easement claimed for the full statutory period.
*Clemens v. Martin* (Mont. 1986), [221 Mont. 483,] 719 P.2d
787, 43 St.Rep. 994.  The statutory period is five years.
Section 70-19-401, MCA.  <u>All elements of prescriptive
easement must be proved by a preponderance of the
evidence or the claim will fail.</u>  *Grimsley v. Estate of
Spencer* (1983), 206 Mont. 184, 670 P.2d 85. All elements
must be proved in a case such as this because "one who
has legal title should not be forced to give up what is
rightfully his without the opportunity to know that his
title is in jeopardy and that he can fight for it."
*Grimsley,* 670 P.2d at 92-93.

<u>Downing</u>, 772 P.2d at 852 (emphasis added).

The above quoted language properly sets forth the elements of a prescriptive easement, the required statutory period and the policy underlying the strict requirements for establishing a prescriptive easement.  See <u>Warnack</u>, 879 P.2d at 718. However, the stated lower burden of proof for prescriptive easement claims is not correct.

In <u>Downing</u>, we relied upon <u>Grimslev</u> as authority for this burden of proof and the underlying policy of prescriptive easement claims.   In <u>Grimslev</u>, the plaintiffs claimed a prescriptive right to the use of water with only a showing of uninterrupted use. We responded that to acquire water rights by prescription, the party alleging prescription must "satisfy every element of the claim . . and that a failure to satisfy any element is fatal to the entire claim. " <u>Grimslev,</u> 670 P.2d at 91-92.  We further explained that:

> To allow a plaintiff, or any party for that matter,
> the opportunity to obtain title. to water rights by a
> showing of mere uninterrupted use would do a disservice
> to the sound precepts of western water law.  Ideally, all

water rights should be obtained in as orderly a manner as is humanely [sic] possible. Prescription does not contribute to the maintenance of an orderly system. Indeed, we recognize that, with respect to water rights based on claims made after July 1, 1973, acquisition of title by prescription is not permitted. We think this observation is akin to the time-honored proposition that one claiming title to property under adverse possession must bear a heavy burden to show that his use of the property is continuous, hostile, actual, notorious, and exclusive to the owner of record, for one who has legal title should not be forced to give up what is rightfully his without the opportunity to know that his title is in jeopardy and that he can fight for it. Water rights are much to precious to forego without a showing of hostile or adverse use.

Grimsley, 670 P.2d at 92-93 (citations omitted).

Nowhere in Grimsley do we state that the proper burden of proof for prescriptive easement claims is a preponderance of the evidence. We only state that a person claiming a water right by prescription, like a person claiming a property right by adverse possession, must bear "a heavy burden" to prove all of the elements of the prescriptive claim. This is supported by the policy giving landowners with legal title the opportunity to protect and remain secure in their property rights.

It was improper that in Downing we chose to rely upon Grimsley, a prescriptive water right case which did not specifically address the burden of proof for either prescriptive water rights or prescriptive property easements, when we had already previously established a long line of clear precedent setting forth the burden of proof in prescriptive easement cases as that of clear and convincing evidence. See, Kostbade v. Metier (1967), 150 Mont. 139, 432 P.2d 382; Descheemaeker v. Anderson (1957), 131 Mont. 322, 310 P.2d 587; Peasley v. Trosper (1936), 103

11

Mont. 401, 64 P.2d 109; Maynard v. Bara (1934), 96 Mont. 302, 30 P.2d 93; Violet v. Martin (1922), 62 Mont. 335, 205 P. 221 (overruled on other grounds); Barnard Realty Co. v. City of Butte (1918), 55 Mont. 384, 177 P. 402. Moreover, both Downing and Tintinger were decided on issues that did not involve a question as to the appropriate burden of proof. Accordingly, our reference in those cases to that burden as being preponderance of evidence was purely dicta, in any event. Consequently, in so far as Downing, Tintinger and any other Montana case adopts a preponderance of the evidence burden of proof in prescriptive easement claims, those cases are hereby overruled to that extent

Moreover, as we stated in Warnack, a prescriptive easement claimant has the burden to prove each element of the prescriptive claim. Warnack, 879 P.2d at 723. Accordingly, the proper burden of proof in prescriptive easement claims is that each element of a prescriptive easement must be proven by the claimant by clear and convincing evidence. Kostbade, 432 P.2d at 385; Warnack, 879 P.2d at 723.

Furthermore, in order to avoid any question as to what constitutes clear and convincing evidence in prescriptive easement cases, we adopt the following definition of clear and convincing evidence from our recent case law:

> [C]lear and convincing proof is simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and

12

> the requirement of criminal procedure--that is, it must be more than a mere preponderance but not beyond a reasonable doubt.

Matter of J.L. (Mont. 1996), 922 P.2d 459, 462, 53 St.Rep. 649, 651. This definition corresponds with the definition the Legislature adopted for the "clear and convincing" evidence burden required in punitive damage claims under § 27-1-221(5), MCA. Matter of J.L., 922 P.2d at 462.

Consequently, we hold that a prescriptive easement claimant must prove each element of the prescriptive easement claim by clear and convincing evidence.

**2. Did the District Court err in concluding that Wareings established all elements of their prescriptive ditch easement claim?**

To establish a private prescriptive easement, the claimant must show "open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement for the full statutory period." Swandal Ranch Co. v. Hunt (1996), 276 Mont. 229, 233, 915 P.2d 840, 843. Schreckendgust contends that the District Court's findings of fact are not supported by substantial evidence and that the District Court misapplied the law to conclude that Wareings had established an easement by prescription. Specifically, Schreckendgust argues that Wareings failed to prove two elements of their prescriptive easement claim; that is, their use was neither exclusive nor adverse.

The District Court in its Amended Finding of Fact No. 24 states that "Wareing has had the exclusive use of the 'Samuel

13

Miller Ditch' since 1960." Schreckendgust argues that the District Court does not set forth its analysis or provide a citation to testimony which supports this finding. Schreckendgust further contends that the District Court does not make a corresponding conclusion of law regarding the element of exclusivity.

We disagree that the District Court must provide analysis and a citation to the record for its findings of fact. We have stated before:

> To determine the effect of Rule 52(a), M.R.Civ.P., it is necessary to first define what is meant by the terms "findings of fact and conclusions of law." This Court has said that findings of fact and conclusions of law are not the judgment, but merely the foundation for the judgment. This foundation need not consist of a multitude of evidentiary facts, but must be comprised of ultimate facts.
> In other words, the findings of fact required by Rule 52(a) is nothing more than a recordation of the essential and determining facts upon which the District Court rested its conclusions of law and without which the District Court's judgment would lack support.

In re the Marriage of Barron (1978), 177 Mont. 161, 164, 580 P.2d 936, 938 (citation omitted).

Here, the District Court heard testimony, reviewed evidence and made the determination that Wareings' use of the ditch in question was exclusive since 1960. The District Court is only required to set forth the ultimate facts of the case and it did so. Therefore, the District Court's Amended Finding of Fact No. 24 is adequate for the purposes of Rule 52(a), M.R.Civ.P. Moreover, upon review of the trial record, we conclude that substantial evidence supports the District Court's finding that Wareings have had exclusive use of the ditch since 1960. Wareings, including their

14

son, testified extensively about their own use and maintenance of the ditch since 1960 for diverting irrigation water from One Horse Creek to Wareings' property. Additionally, Wareings testified that throughout their ownership, they rented out their property to others, who also used the ditch to convey irrigation water to Wareings' property.

Furthermore, contrary to Schreckendgust's argument, the District Court does make a corresponding conclusion of law regarding the element of exclusivity. In Amended Conclusion of Law No. 2; the District Court states that Wareings have proven, by clear and convincing evidence, all the elements of a prescriptive easement, including that of exclusivity. This conclusion, combined with the rest of the District Court's findings of fact and conclusions of law, provides the foundation for the District Court's judgment that Wareings' have a prescriptive easement across Schreckendgust's property.

Schreckendgust, nevertheless, asserts that the District Court misapplied the law of exclusivity. Schreckendgust argues that Wareings offered no proof that their right was separate from the rights of others to use the ditch. Schreckendgust claims Wareings did not use the ditch exclusively, but rather shared the use of the ditch with many other landowners in the area. Therefore, Schreckendgust asserts, Wareings could never assert an exclusive right based on the simple fact that other people used the ditch also. We, again, disagree.

15

This Court dealt with a similar issue 73 years ago. See Hays v. De Atley (1923), 65 Mont. 558, 212 Pac. 296. In Hays, the plaintiff, in his complaint, claimed the right to use one half of the capacity of an irrigation ditch while conceding that the defendants had the right to use the other half of the ditch's capacity. The defendants responded that based on this claim to only one half the capacity of the ditch, the plaintiff's use could not have been exclusive. Therefore, the defendants argued that the complaint failed on its face. We held that the plaintiff's complaint was not subject to such an attack, explaining that:

> [T]he term "exclusive" as employed by the courts in enumerating the elements of prescription does not mean that no one else may use the ditch except the plaintiff, the claimant of the easement. It means no more than that his right to use it does not depend on the like right in others. Plaintiff's use may have been exclusive within the meaning of the rule even though defendants used the ditch, so long as their use did not interfere with the use by plaintiff. . . . The rule has its foundation in the general principle, recognized by all the authorities, that the owner of the servient estate may use his property in any manner and for any purpose consistent with the enjoyment of the easement by the claimant.

Hays, 212 Pac. at 298 (citations omitted).

Likewise, Wareings are claiming a prescriptive easement for use of the irrigation ditch to convey their allotted water from One Horse Creek. Whether others, including Schreckendgust, also used the ditch does not affect Wareings' claim. Despite the other landowners' use of the ditch, Wareings' use was still exclusive within the meaning of the rule. That is, Wareings' claim of adverse use did not depend upon the other landowners' use of the ditch. See Hays, 212 Pac. at 298. Consequently, we conclude that

16

the District Court properly applied the law relating to the element of exclusivity in this prescriptive easement claim when it determined that Wareings' use was exclusive since 1960.

Finally, Schreckendgust argues that Wareings' use was permissive, not adverse. Schreckendgust claims that the record indicates that Wareings' predecessor-in-interest, William E. Gleason, used the ditch with permission. Specifically, Schreckendgust testified that in 1937, Schreckendgust and his father had a conversation with Gleason wherein Gleason said he had received permission from Schreckendgust's predecessor-in-interest, Excelsior Realty, to extend the ditch to what is now Wareings' property. Schreckendgust asserts that Wareings failed to refute this evidence of original permissive use, and, therefore, Wareings cannot now claim that their use of the ditch was adverse. Schreckendgust also contends that the District Court minimized the impact of his testimony concerning the conversation with Gleason, heard no testimony contradicting his own, failed to make a finding that his testimony was so lacking in credibility so as to discard it and ignored his policy of permissive use. Once more, we disagree.

After a claimant has established the elements of a prescriptive right, a presumption of adverse use arises and the burden shifts to the landowner affected by the prescriptive claim to establish that the claimant's use was permissive. Tanner v. Dream Island, Inc. (1996), 275 Mont. 414, 425, 913 P.2d 641, 648; Lemont Land Corp. v. Rogers (1994), 269 Mont. 180, 185, 887 P.2d

17

724, 727-28.    If the landowner proves the use is permissive, a prescriptive easement cannot be established.    Lemont, 887 P.2d at 728.    Here, the District Court concluded that Wareings, by clear and convincing evidence, established the elements of a prescriptive right and thereby raised the presumption that their use of the ditch was adverse.    Furthermore, the District Court explained that the burden to rebut this presumption then shifted to Schreckendgust.

Yet, the District Court found, in Amended Finding of Fact No. 16, that Schreckendgust's testimony concerning the 1937 conversation wherein Gleason had received "permission" to extend the ditch "appears to be [Schreckendgust's] own self-serving conclusion."    Additionally, contrary to Schreckendgust's contention, in Amended Finding of Fact No. 20, the District Court found. evidence contradicting Schreckendgust's testimony of permissive use.    In fact, the District Court found that Schreckendgust himself testified on cross examination that neither Wareings, nor their predecessors-in-interest, expressly sought his permission to use the ditch.    Instead, Schreckendgust testified they would notify him when they turned on the water in the ditch. The court found that while Schreckendgust perceived this as an implied request for permission, other witness testimony indicated that this notification was only neighborly custom.

As a result of these findings, the District Court, in Amended Conclusions of Law Nos. 5 and 6, concluded that Schreckendgust failed to rebut the presumption of adverse use, again pointing out

18

that the only evidence Schreckendgust presented was his own "self-serving and unverifiable hearsay testimony" regarding the 1937 conversation with Gleason noted above. The District Court described Schreckendgust's testimony as a conclusion having no basis in the record. Furthermore, the District Court concluded that both parties testified that for approximately the past 50 years, neither Wareings, nor their predecessors, asked Schreckendgust for permission to use the ditch, but rather used it as a matter of right.

The district court is in a better position to observe the witnesses and judge their credibility than this Court. Double AA Corp. v. Newland & Co. (1995), 273 Mont. 486, 494, 905 P.2d 138, 142. Therefore, "[w]e will not second guess the district court's determination regarding the strength and weight of conflicting testimony." Double AA Corp., 905 P.2d at 142. Moreover, we review a district court's findings to determine whether substantial evidence supports those findings, not contrary findings. Rafanelli v. Dale (Mont. 1996), 924 P.2d 242, 248, 53 St.Rep. 746, 750.

Consequently, after reviewing the District Court's findings, we note only that the District Court did not "ignore" Schreckendgust's testimony concerning his policy to give permission to use the ditch. Rather, the District Court considered this testimony along with Schreckendgust's testimony concerning the 1937 conversation with Gleason and weighed this against testimony given by Wareings and other witnesses concerning the nature of Wareings' use of the ditch. The court described the contradicting character

19

of the parties' testimony and determined that Schreckendgust's testimony concerning the Gleason conversation was a "self-serving conclusion" and "unverifiable hearsay" and, thereby, effectively discarded it.

By making these findings, the District Court determined that the testimony given by Wareings and other witnesses was more credible than Schreckendgust's testimony. Based upon this determination, the District Court concluded that Wareings established a presumption of adverse use and Schreckendgust failed to rebut this presumption. The court's decision was grounded in the record, in its judgment of the witnesses' credibility and in the law. Accordingly, we hold that the District Court's findings of fact are supported by substantial evidence and that the District Court properly determined that Wareings' use was adverse and not permissive.

**3. Under the doctrine of estoppel, are Wareings precluded fromasserting a prescriptive easement right against Schreckendgust after they acquired an express ditch easement from a neighboring landowner over property previously owned by Schreckendgust?**

Schreckendgust asserts that Wareings, in 1989, obtained an express ditch easement from Steve Schertenleib who owns Florence Orchard Homes Lot 38, a lot he purchased from Schreckendgust in 1988. Schreckendgust argues that by obtaining this ditch easement, Wareings admitted that they were not entitled to make a prescriptive easement claim with respect to Lot 38. Therefore, Schreckendgust concludes, Wareings should be estopped from

asserting a prescriptive easement across Lots 19 and 20 because Schreckendgust owned these lots with Lot 38, as one unit, until he sold Lot 38 to Schertenleib.

Schreckendgust relies on Kephart v. Portmann (1993), 259 Mont. 232, 237, 855 P.2d 120, 123. Schreckendgust points out that in Kephart, we concluded that the plaintiffs were estopped from challenging the defendants' ditch right because the plaintiffs had acknowledged the defendants' superior ditch right in a 1960 Ditch Agreement. Schreckendgust suggests that the Kephart situation is "nearly the mirror image" to the situation concerning Lot 38. Therefore, Schreckendgust argues that because Wareings have acknowledged the superior rights of Schreckendgust's successor, clearly they should be estopped from denying the superior rights of Schreckendgust.

We find Schreckendgust's argument unpersuasive. Because estoppel is an affirmative defense, Schreckendgust bears the burden of proof. Rule 8(c), M.R.Civ.P.; § 26-1-401, MCA; § 26-1-402, MCA. See also, Insurance Specialists, Inc. v. Longfellow (1982), 201 Mont. 132, 135, 654 P.2d 500, 502; Baker Nat'l Bank v. Lestar (1969), 153 Mont. 45, 50-51, 453 P.2d 774, 777. In Keuhart, we carefully considered the six elements of equitable estoppel and the evidence supporting each element to determine that the plaintiffs were estopped from challenging the defendants' ditch rights. Keuhart, 855 P.2d at 123. In this case, Schreckendgust could meet his burden of proof only by specifically arguing that each element of estoppel is present and providing evidence in support. Yet,

21

Schreckendgust did not develop or fully argue any of the estoppel elements, either in the District Court or now on appeal.

In fact, in arguing on appeal that we should apply the Kephart rationale, Schreckendgust fails to identify any of the six elements of equitable estoppel. Instead, Schreckendgust makes a simple conclusory statement that because "the ditch claimant [Wareings] has acknowledged the superior rights of the landowner's successor [Schertenleib], he clearly should be estopped from denying the superior rights of the landowner himself [Schreckendgust]." It is Schreckendgust's burden, not this Court's, to establish that the elements of estoppel are met, and we conclude that Schreckendgust has failed to meet his burden in this case. Accordingly, we hold that Wareings are not estopped from asserting their prescriptive easement **claim**.

**4. Did the District Court err when it failed to expressly limit the scope of Wareings' prescriptive ditch easement both as to location and method of maintenance?**

In its Amended Conclusion of Law No. 8, the District Court stated:

> Plaintiffs do therefore possess an easement by prescription across Defendant's real property for the conveyance of their allotted water rights from One Horse Creek by the course shown in the Water Resource Survey for Ravalli County and labeled by that publication as the "Samuel Miller Ditch."

Schreckendgust argues that the above language fails to limit the scope of Wareings' easement for the irrigation ditch. He contends that while he counterclaimed in this suit to quiet title to numerous lots in Florence Orchard Homes, the ditch only crosses

22

Lots 19 and 20. Furthermore, Schreckendgust argues that Wareings have offered no proof of any claim to any parcels in Florence Orchard Homes other than Lots 19 and 20. Therefore, he asserts that the easement should be specifically limited to Lots 19 and 20.

Wareings argue that within Amended Conclusion of Law No. 8, the District Court specifically delineated an easement for the irrigation ditch where it is presently located. Therefore, they contend that the District Court properly limited the scope of the easement.

We have stated that when a prescriptive easement is acquired, "the right of the owner of the dominant estate is governed by the character and extent of use during the period requisite to acquire it." Warnack, 879 P.2d at 724 (quoting Marta v. Smith (1981), 191 Mont. 179, 183, 622 P.2d 1011, 1013). The evidence shows that Wareings, during the prescriptive period, used the "Samuel Miller Ditch" to convey their allotted water from One Horse Creek to their property. Furthermore, in Amended Conclusion of Law No. 8, the District Court adequately limits the scope of Wareings' prescriptive easement based on their use during the prescriptive period.

First, the District Court specified that the character of Wareings' use of the ditch easement was to convey their allotted water from One Horse Creek. Second, the District Court specified the extent of Wareings' use by indicating that the location of the ditch was shown in the Water Course Survey for Ravalli County and labeled as "Samuel Miller Ditch." See Appendix A. Therefore, the

23

District Court need not expressly limit the scope of the easement to Schreckendgust's Lots 19 and 20 in addition to its reference to the location of the ditch as shown by the Water Resources Survey for Ravalli County. Certainly, the District Court's reference to the Water Resources Survey for Ravalli County adequately indicates the location of the ditch as it crosses Schreckendgust's property.

Schreckendgust also argues that the District Court did not limit the scope of Wareings' method of maintaining the ditch. Schreckendgust notes that in Amended Finding of Fact No. 22 the District Court found that Wareings' maintenance of the ditch "consisted merely of shovel and hand cleaning." Schreckendgust maintains that although Wareings failed to offer proof that the scope of maintenance of the ditch should go beyond shovel and hand cleaning, the District Court did not expressly limit Wareings' maintenance of the ditch to shovel and hand cleaning. Wareings respond that no one offered evidence that any large scale maintenance was needed on the ditch. Therefore, Wareings contend that, by implication, their maintenance of the ditch is limited to their historical method of shovel and hand cleaning.

The District Court, in Amended Finding of Fact No. 22, found that Wareings, throughout the prescriptive period, maintained the ditch by shovel and hand cleaning. Wareings' method of maintaining the ditch cannot exceed the method used during the prescriptive period. See Marta, 622 P.2d at 1013. That is, Wareings' maintenance of the ditch is limited to shovel and hand cleaning. The District Court did not commit reversible error by failing to

24

expressly limit Wareings' maintenance of the ditch to shovel and hand cleaning.

In conclusion, the District Court adequately limited the scope of Wareings' prescriptive easement as to the location of the ditch in Amended Conclusion of Law No. 8. Furthermore, the District Court did not commit reversible error by failing to expressly limit the scope of Wareings' prescriptive easement as to their method of maintenance.

5. Is Schreckendgust entitled to attorney fees under § 70-17-112, MCA?

Schreckendgust argues that if he is successful in defeating Wareings' prescriptive easement claim on appeal, he would then be the prevailing party and entitled to attorney fees under § 70-17-112, MCA. However, we have affirmed the District Court on all issues raised on appeal; therefore, Wareings are still the prevailing parties. Accordingly, Schreckendgust is not entitled to attorney fees under § 70-17-112, MCA.

6. Should this case have been remanded for a new trial?

Schreckendgust, in his supplemental brief, argues that the Montana Supreme Court erred when it ordered the District Court to reconsider its findings of fact and conclusions of law using the proper burden of proof. Schreckendgust contends that the Montana Supreme Court placed the District Court in the position of determining whether its original application of the lower burden of proof was reversible or harmless error. Therefore, Schreckendgust

25

argues that the Montana Supreme Court should remand this case for a new trial. We disagree.

In our May 14, 1996 Order, we ordered the District Court to reconsider its findings of fact and conclusions of law applying the clear and convincing burden of proof to the existing record. The facts contained in the record were established during trial. Whether the quantum of the evidence presented at trial satisfies merely a preponderance of evidence burden or the higher clear and convincing burden of proof is, in this case, solely within the court's purview. Therefore, in remanding the case to the District Court with instructions to reconsider its findings of fact and conclusions of law by applying the clear and convincing burden of proof to the existing record, we merely directed the court to determine whether the existing record was sufficient to satisfy the higher burden. The application of a burden of proof does not alter the underlying facts or the law; it simply determines whether the party with the burden has successfully borne the obligation which the law has placed upon him to prove his case by a certain quantum of evidence. Here, the trial court determined that even when applying a higher burden of proof, Wareings had successfully established the elements of their prescriptive easement claim. On the basis of the record here, we do not disagree with the District Court.

Schreckendgust, nevertheless, argues that only by remanding for a new trial can he make a motion for substitution of the District Court Judge under § 3-1-804(1)(g), MCA, and thereby insure

26

the District Court's impartiality. Schreckendgust argues that the District Court Judge could not provide him with an impartial review when he reconsidered the original findings of fact and conclusions of law. Schreckendgust explains that the current District Court Judge, prior to his election, served as opposing counsel in an action concerning title to real property which was decided in Schreckendgust's favor. After the current District Court Judge was elected, Schreckendgust brought two additional real property cases before him. In both, Schreckendgust's claims were defeated. Schreckendgust notes that he appealed both cases, including this case currently before us.

Schreckendgust further notes that he was involved in yet a third case before this same District Court Judge, and promptly made a motion for substitution. Schreckendgust contends that the District Court Judge's former position as counsel in a suit involving Schreckendgust was adverse, and now his recent decisions as District Court Judge continue to be adverse. Therefore, Schreckendgust asserts "it is fundamentally unfair that [Schreckendgust] was not afforded the due process protection of having a substitute District Judge hear the evidence and issue new Findings of Fact and Conclusions of Law that applied the correct burden of proof." We disagree.

Aside from finding nothing in the record that would support a conclusion that the District Judge was biased or partial, Schreckendgust had two separate opportunities to move for substitution of district court judge during the original trial.

First, under § 3-1-804(1), MCA, each adverse party is entitled to one substitution of a district judge. Second, under § 3-1-805, MCA, Schreckendgust was permitted to make a motion for disqualification for cause. Schreckendgust failed to timely make either motion. Clearly, Schreckendgust was not denied due process in this case. Rather, he voluntarily waived his rights to substitute or disqualify the District Court Judge. Accordingly, we conclude that Schreckendgust's argument that we should have remanded this case for a new trial is without merit.

Affirmed.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices

28



Appendix A