No. 98-479

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 166N

PLUM CREEK TIMBER COMPANY, L.P., A Delaware

Limited Partnership,

Plaintiff and Respondent,

v.

JAMES C. TOOMEY, SR., MARGARET V. TOOMEY and

all other persons, known or unknown, who claim or may claim

any right, title, estate, lien, encumbrance or interest in the real

property described in the complaint adverse to Plaintiff's title

thereto,

Defendants and Appellants.

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

The Honorable Michael C. Prezeau, Judge presiding.


COUNSEL OF RECORD:


For Appellant:


William A. Douglas, Douglas Law Firm, Libby, Montana


For Respondent:


Thomas R. Bostock, Warden, Christiansen, Johnson & Berg, Kalispell, Montana


                                                      Submitted on Briefs: January 14, 1998


Decided: July 8, 1999

Filed:

No

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. Plum Creek Timber Company (Plum Creek) filed suit against James C. Toomey, Sr. and Margaret V. Toomey (the Toomeys) to prevent the Toomeys from claiming any estate, title, interest in or right to use two roadways on land owned by Plum Creek. The District Court for the Nineteenth Judicial District, Lincoln County, found in favor of Plum Creek and the Toomeys appeal. We affirm.**

**¶3. We address the following issues on appeal:**

**¶4. 1. Whether the Toomeys have established the existence of a prescriptive easement over the roads in question.**

**¶5. 2. Whether the roads in question are public roads under 43 U.S.C. § 932.**

## Factual and Procedural Background

**¶6. In 1988 and 1989, the Toomeys purchased approximately 190 acres of land situated north of Troy, Montana. The land is contained in two contiguous parcels, one consisting of 150 acres and the other consisting of 40 acres. At the time of trial,**

Plum Creek owned property in the same area, some of which is adjacent to the Toomeys' property. Plum Creek acquired this property in 1993 from Champion International Corporation (Champion), who acquired the property in 1991 in a land exchange with the United States Forest Service. Two of the roads that run through Plum Creek's property, the Alvord Lake Road and the Peterson Ranch Road, are the subject of this dispute.

¶7. When the Toomeys purchased their property in 1988 and 1989, the Alvord Lake Road and the Peterson Ranch Road had fallen into disuse and were obstructed by erosion and overgrowth, including trees eight to ten feet in height, rendering the roads impassible in places. Sometime in 1992, James Toomey entered Champion's property and used a bulldozer to clear the two roads. Champion advised Toomey that he was trespassing and blocked both roads. Nevertheless, Toomey, claiming that the roads are public roads providing access to his property, attempted to rebuild them. Champion once again blocked the roads. When Plum Creek acquired the property from Champion in 1993, Plum Creek inherited the dispute with the Toomeys.

¶8. On January 8, 1996, Plum Creek filed a complaint in the District Court for Lincoln County requesting that the court adjudge that the Toomeys have no estate, title, interest in or right to use the disputed roads and that Plum Creek owns such real estate in absolute fee simple title. Plum Creek also requested that the court award damages to Plum Creek for the Toomeys' repeated trespass on Plum Creek's property.

¶9. The Toomeys filed their answer on April 30, 1996, wherein they contended that the Peterson Ranch Road and the Alvord Lake Road are Lincoln County roads. Thus, they requested that the District Court enter a declaratory judgment holding that the Toomeys and other members of the general public have the right to use the roads.

¶10. A bench trial was held in this matter on May 30, 1996. Both parties appeared with counsel and offered testimony and evidence in support of their respective positions. In addition, the court traveled to the disputed property, accompanied by a representative from each party, to view the roadways in question. On October 31, 1997, the court issued a Mutual Restraining Order "[f]or the safety and protection of all parties," restraining the Toomeys and Plum Creek from interfering with the

peaceful use of the disputed roadways pending further order from the court.

**¶11. On June 29, 1998, the District Court entered its Findings of Fact, Conclusions of Law, and Order wherein the court determined that the Toomeys failed to satisfy their burden of proof that either a public easement by prescription existed over the roads or that the roads are public roads under 43 U.S.C. § 932. Thus, the court ruled that Plum Creek owns the Alvord Lake and Peterson Ranch roads where they exist on Plum Creek's property and that the Toomeys have no legal right to use these roads by virtue of a prescriptive easement or otherwise. The court also determined that neither party was entitled to damages from the other. From this judgment the Toomeys appeal.**

## Standard of Review

**¶12. A district court's findings of fact, whether based on oral or documentary evidence, shall not be set aside unless they are clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. Rule 52(a), M.R.Civ.P.; *Wareing v. Schreckendgust* (1996), 280 Mont. 196, 202, 930 P.2d 37, 41. We have adopted the following three-part test to interpret Rule 52(a), M.R.Civ.P.:**

First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of the evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed."

*Wareing*, 280 Mont. at 202, 930 P.2d at 41 (quoting *Public Lands Access v. Boone & Crockett* (1993), 259 Mont. 279, 283, 856 P.2d 525, 527; *Interstate Production Credit v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287).

**¶13. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Wareing*, 280 Mont. at 203, 930 P.2d at 41 (citing *Public Lands*, 259 Mont. at 283, 856 P.2d at 527).**

No

## Issue 1.

**¶14.** *Whether the Toomeys have established the existence of a prescriptive easement over the roads in question.*

**¶15. An easement by prescription is created by operation of law.** *Hitshew v. Butte/Silver Bow County*, **1999 MT 26, ¶ 16, 974 P.2d 650, ¶ 16, 56 St.Rep. 111, ¶ 16 (citing** *Rettig v. Kallevig* **(1997), 282 Mont. 189, 193, 936 P.2d 807, 810). Generally, a party claiming a prescriptive easement must establish open, notorious, exclusive, adverse, continuous and uninterrupted use of the claimed easement for the full statutory period of five years. Section 70-19-401, MCA;** *Hitshew*, **¶ 16. "All elements must be proved in a case such as this because 'one who has legal title should not be forced to give up what is rightfully his without the opportunity to know that his title is in jeopardy and that he can fight for it.'"** *Wareing*, **280 Mont. at 204, 930 P.2d at 42 (citing** *Grimsley v. Estate of Spencer* **(1983), 206 Mont, 184, 198, 670 P.2d 85, 92-93).**

**¶16. We have applied a similar criteria in the context of public prescriptive easements:**

That the public may acquire the right by prescription to pass over private land is undisputed and such is the law in Montana. To establish the existence of a public road by prescription it must be shown that the public followed a definite course continuously and uninterruptedly for the prescribed statutory period together with an assumption of control adverse to the owner . . . .

*Hitshew*, ¶ 16 (quoting *Granite County v. Komberec* (1990), 245 Mont. 252, 257, 800 P.2d 166, 169). However, the element of exclusivity is not required in establishing the existence of a "public" prescriptive easement. *Hitshew*, ¶ 16.

**¶17. A prescriptive easement claimant has the burden to prove each element of the prescriptive claim by clear and convincing evidence.** *Wareing,* **280 Mont. at 205-206, 930 P.2d at 43 (citing** *Warnack v. Coneen Family Trust* **(1994), 266 Mont. 203, 215-16, 879 P.2d 715, 723;** *Kostbade v. Metier* **(1967), 150 Mont. 139, 143, 432 P.2d 382, 385).**

[C]lear and convincing proof is simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedure--that is, it must be more than a mere preponderance but not beyond a reasonable doubt.

*Wareing*, 280 Mont. at 206, 930 P.2d at 43 (citing *Matter of J.L.* (1996), 277 Mont. 284, 289, 922 P.2d 459, 462).

¶18. The Toomeys' claim of a public prescriptive easement is largely based on the testimony of Jackson Brown (Brown), a road maintenance worker employed by the Lincoln County Road Department from 1949 until his retirement in 1983. Brown had lived in Troy, Montana since 1932. He testified at trial that both roads were traveled by the general public in the 1930s. Brown also testified that between 1949 and 1961, as an employee of Lincoln County, he occasionally graded the roads in question to close any ruts so that the roads could be driven over in the summer and that he plowed snow from the roads in the winter. He stated that the roads were not maintained on a regular schedule, but that they were generally graded or plowed every year.

¶19. Brown also testified that maintenance of the disputed roads was performed at the direction of the Lincoln County Commissioners and that one of the homesteads accessed by the roads was owned by Jack Ninneman, who, according to Brown, was "a real important man in Lincoln County" at that time. Brown further testified that although one of the county commissioners had told him that the Alvord Lake Road and the Peterson Ranch Road were county roads, maintenance of these roads stopped altogether in the late 1950s when Ninneman and the county commissioners had a "falling out."

¶20. In addition, Brown testified that from the 1930s through the 1960s, there were a number of families who resided north of Alvord Lake in the O'Brien Creek area and when the other routes to their homes were impassible from washouts, the residents would use the Alvord Lake Road to reach their homes. Moreover, as early as 1935, the State of Montana had a fish hatchery of sorts at Alvord Lake. To facilitate

traveling to the lake, the State enlisted the aid of the families living in the area to shovel in ruts on the Alvord Lake Road and otherwise help maintain the road.

¶21. Thus, the Toomeys argue that because the roads were utilized for a public purpose beginning in the 1930s and because the roads were maintained by county equipment, personnel and fuel from 1949 through 1961, an easement by prescription was established in favor of the public and Lincoln County.

¶22. Plum Creek, on the other hand, maintains that merely because Lincoln County helped maintain these roads for a time does not mean that they are county roads. Plum Creek points out that Brown had testified at trial that during the 1950s, it was not unusual for county road crews to do periodic maintenance on roads or driveways that were not county roads. And, Brown further testified that, as a public service, the county would lend out its road maintenance equipment to county residents to allow them to keep their own private roads open. In addition, Lawrence Dolezal, a Lincoln County Commissioner at the time of trial, testified that there are no records to document that Lincoln County ever maintained the roads, although he was not prepared to discount Brown's assertions that it did. Moreover, there are no county records to indicate that the roads in question are county roads.

¶23. Nevertheless, Plum Creek argues that it makes no difference whether the roads were used by the public beginning in the 1930s or whether the roads were maintained by the county from 1949 through 1961. Plum Creek contends that the land upon which the roads are situated was owned by the United States Forest Service during those time periods and a prescriptive easement cannot be granted or obtained for property owned by the United States Government. Hence, Plum Creek argues that the Toomeys were required to establish, by clear and convincing evidence, that a public prescriptive easement was created over the roads in question prior to the date the land was appropriated for public purposes by the Forest Service.[1] Plum Creek further argues that the Toomeys failed to meet their burden of proof in that no evidence was introduced to establish the origins of the roads or the circumstances under which the roads were established.

¶24. In *United States v. California* (1947), 332 U.S. 19, 40, 67 S.Ct. 1658, 1669, 91 L. Ed. 1889, the Supreme Court held that title by prescription could not be claimed against the United States. Thus, Plum Creek is correct that a prescriptive easement was not established during the time period the land was owned by the Forest Service--

1906 to 1991--because there could be no "assumption of control adverse to the owner," i.e., the United States Government. *Hitshew*, ¶ 16.

¶25. Furthermore, the Toomeys have not presented any evidence to show when or under what circumstances the roads in question were first created. Nor have they presented any evidence to show "that the public followed a definite course continuously and uninterruptedly for the prescribed statutory period together with an assumption of control adverse to the owner," *Hitshew*, ¶ 16, prior to 1906, the date the land was appropriated for public purposes by the Forest Service, or if indeed the roads even existed prior to that time. *Hitshew*, ¶ 16.

Neither have the Toomeys presented any evidence to show that they personally or their predecessors in interest had used the roads at any time prior to 1992 when Toomey attempted to clear the roads with a bulldozer.

¶26. Accordingly, we hold that the District Court was correct in concluding that the Toomeys failed to prove, by clear and convincing evidence, that a prescriptive easement had been established for the Alvord Lake and Peterson Ranch roads.

## Issue 2.

¶27. *Whether the roads in question are public roads under 43 U.S.C. § 932.*

¶28. Congress enacted Revised Statute § 2477 (subsequently renumbered 43 U.S.C. § 932) in 1866. It's purpose was "to enable the public to acquire a roadway over public lands." *Richter v. Rose*, 1998 MT 165, ¶ 27, 962 P.2d 583, ¶ 27, 55 St.Rep. 663, ¶ 27 (quoting *City of Butte v. Mikosowitz* (1909), 39 Mont. 350, 355, 102 P. 593, 595). 43 U.S.C. § 932 was repealed on October 21, 1976, by the Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, § 706(a), 90 Stat. 2793. While in effect, this code section provided: "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." 43 U.S.C. § 932.

¶29. The Toomeys contend that the Alvord Lake Road and the Peterson Ranch Road became public roads by virtue of 43 U.S.C. § 932, since that statute granted a right of way for highways over public lands. The Toomeys maintain that although this code section was repealed in 1976, the savings clause of the act repealing it specifically stated that the validity of roadways previously established was to continue. Thus, the

Toomeys argue that since the roads in question are established roadways over public lands, they are public roads.

¶30. In support of their contention, the Toomeys cite *Parker v. Elder* (1988), 233 Mont. 75, 758 P.2d 292, wherein plaintiff sought a permanent injunction enjoining defendants from interfering with plaintiff's use of a road which crossed defendant's land. This Court determined that there was insufficient evidence to support the lower court's finding that the road was a granted public road by reason of 43 U.S.C. § 932. However, we concluded that plaintiff did have a road right-of-way by reason of prescriptive easement. *Parker*, 233 Mont. at 78-79, 758 P.2d at 294-95. We stated in *Parker*:

"Section 2477 of the Revised Statutes of the United States [43 U.S.C. § 932] goes no further than to grant a right of way for the *construction* of a highway across public lands . . . . The grant is but an offer of the right of way for the construction of a public highway on some particular strip of public land, and *can only become fixed when a highway is definitely established and constructed in some one of the ways authorized by the laws of the state in which the land is situated."*

*Parker*, 233 Mont. at 77, 758 P.2d at 293 (emphasis added) (quoting *State ex rel. Dansie v. Nolan* (1920), 58 Mont. 167, 172-73, 191 P. 150, 152).

¶31. The Toomeys claim that under *Parker*, if a highway is created by prescription when used by the public for the appropriate statutory period of limitation, then that highway "is one that has been created in a fashion as authorized by the State of Montana for establishing public highways and that the provisions of 43 U.S.C. § 932 have been satisfied." Contrary to the Toomeys' contentions, however, *Parker* does not support their theory. The Toomeys presuppose that a highway was created by prescription over the roads in question. But, as we already concluded in the previous issue, the Toomeys failed to prove by clear and convincing evidence that a prescriptive easement had been established in this case. Thus, the Toomeys' theory under 43 U.S.C. § 932 must fail because their basic premise, that a highway was created by prescription, is false.

¶32. Furthermore, a key to the establishment of a highway under 43 U.S.C. § 932, is whether the land on which the road is claimed was "reserved for public uses" at the

time the right was allegedly established. The roads at issue in the case before us were on land set aside as part of the Kootenai National Forest in 1906, and as such, the land was reserved for public use by the Forest Service from 1906 until the Forest Service exchanged the land to Champion in 1991. 43 U.S.C. § 932 only grants a right of way for the construction of highways "over public lands, <u>not</u> reserved for public uses."

¶33. Moreover, the record is devoid of any information that would indicate that the roads were created prior to 1906, before the land was "reserved for public uses" by the Forest Service. In fact, the earliest evidence of the roads' existence is Brown's testimony that he had traveled the roads in the 1930s. Therefore, the Toomeys' argument fails in this regard as well because there is nothing to indicate that a highway could have been established under 43 U.S.C. § 932 prior to the land being "reserved for public uses" in 1906.

¶34. Accordingly, we hold that the District Court was correct in concluding that the roads in question are not public roads under 43 U.S.C. § 932.

¶35. Affirmed.


/S/ JAMES C. NELSON


We Concur:


/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

No

1. <sup>1</sup> The Kootenai National Forest, of which the land in question was a part, was established in November 1906.